Jerry PRIDEAUX, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14521.

Court of Criminal Appeals of Oklahoma.

July 22, 1970.

Frazier, Richard, Mefford & Fraser, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Gene Hoyt, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

This is an appeal from the District Court of Cherokee County, Oklahoma, for the crime of robbery with firearms. Plaintiff in error, hereafter referred to as defendant, was tried by a jury which found him guilty and sentenced him to serve a term of twenty-five years in the state penitentiary. Defendant's motion for new trial was filed, argued before the trial court, and over-ruled; thereafter, the appeal was perfected to this Court.

The defendant was accused of robbing a man by the name of Rayford Williams on the 13th day of January, 1966, by waiting in his house until said Rayford Williams returned, and menancing him with a .22 caliber automatic, and taking from him $3,800.00 that belonged to Rayford Williams.

Rayford Williams testified for the State that he had been robbed. Louie Peters testified that he lives near Rayford Williams, and on January 13th, 1966, Williams came up to where he and his son-in-law, a person by the name of Roach, were standing in the road. Rayford Williams said he had been robbed. That shortly before that time, he had observed a person driving a white Buick automobile, go past him, that there was another person in said car with the driver whom he couldn't identify. He testifed that later the next day, he went to Tulsa and there identified the defendant, Jerry Prideaux, as the person he had seen the day before driving the white Buick automobile. He further stated that while in Tulsa, he identified the white Buick because of a broken tail light.

The State put on Walter Kessinger, who was the Deputy Sheriff, who first was notified of the robbery, then they put on James W. Clark, Larry Compton, who were police officers in the effect of the arrest, and the search of the defendant in Tulsa County. They then recalled Louie Peters, and he testified that he identified the car on January 14th, in the police garage, and that he identified the defendant in a police lineup.

In his motion for new trial, defendant set forth eight citations of error which he argued extensively before the court. However, in his brief, defendant cites one proposition of error, as follows: "The trial court should be reversed because the State was permitted over the objections of the defendant, to present to the court and jury evidence of an extra-judicial identification." In support of his proposition defendant cites, Gillespie v. State, Okl.Cr., 355 P.2d 451, and Cothrum v. State, Okl. Cr., 379 P.2d 860.

The record reveals that the prosecutor said in his opening remarks to the trial jury, "Mr. Prideaux was arrested and the next day the sheriff's office here in Tahlequah was informed about it and one of the officers here in Tahlequah, from the sheriff's office, got Mr. Peters and took him to Tulsa. They brought in Mr. Prideaux and four others, I believe there were five in the line-up. * * *" The defense counsel, Mr. Briggs, objected, "Now, if your honor please, at this time we make an

objection to counsel making any reference to a line-up and move, at this time, that it be stricken." The court sustained the objection concerning the phrase, "line-up."

Subsequently, during the course of the direct examination of the witness, Louie Peters, who observed a white Buick automobile drive past him on the road in front of his house, the prosecution was apparently in the process of making inquiry concerning the line-up and asked the witness, "Have you seen him (defendant) since that time, between then and today?" The witness replied, "I saw him in Tulsa." Objection was entered because the question could be answered either "yes," or "no." The witness answered "yes." The prosecutor then inquired, "All right, when did you see him and where did you see him?" Defense counsel objected on the grounds that the question was improper, incompetent, irrelevant and immaterial; the objection was overruled and exceptions allowed. The witness answered, "I saw him in Tulsa." Defense counsel asked that they approach the bench, and the court granted a brief recess, during which a discussion was had relative to the line of questioning. Defense counsel anticipated that the State was attempting to show some prior identification in the nature of an extra-judicial identification. The court admonished the prosecutor that he must show defendant's arrest in Tulsa, before he could show him in custody.

When the trial continued, the witness was asked for the description of the man he observed in the Buick automobile; gave a brief description of the man, and stated that he noted that the car license tag commenced with "ZF," but he could not give more than the first two letters. He described the color of the car and stated that the right rear light lens was broken. He also stated that he saw the vehicle in Tulsa the next day, "I saw it in a garage in Tulsa where there was a lot more cars."

Subsequently two Tulsa Police Officers testified that they arrested the defendant in Tulsa, but their surveillance of de-

fendant's automobile was premised on the description as being a white Buick, with a license tag commencing with the letters "ZF." The officer who actually made the arrest testified that the arrest was made for "improper tail-lights;" that the right rear light had a broken lens, and white light was showing. At the conclusion of the officer's testimony, witness Louie Peters was recalled to the stand and answered the prosecutor's question, over defendant's objection, " * * * Now I ask you if you saw the man the next day." The witness replied, "The 14th, the next day." The Prosecutor asked, "Where did you see him?" "I seen him in the Tulsa Police Station," answered the witness. Later, the witness testified, "Yes, sir, I saw him the next day in the Tulsa Police Station in the line-up." All of this line of questioning was objected to by counsel and his motion for a mis-trial was denied.

In the *Cothrum* case, Supra, the defendant did not object to the prosecutor's opening remarks concerning the identification in a line-up, but in the instant case such objection was made and exceptions were properly preserved. Likewise, the defendant objected at each time any reference was even implied, to an extra-judicial identification. In *Cothrum*, this Court quotes from Gillespie v. State, supra:

"Identification of the defendant at a police line-up prior to trial and subsequent to the alleged crime is not an identification of the defendant as the one who committed the (crime), but testimony of an extra-judicial identification and is inadmissible as original testimony."

In the instant case, such testimony appears in the State's original testimony in chief. In *Gillespie*, the Court sets forth that the issue in the case at bar concerns the identification of the defendant as being the one who committed the alleged crime: could the witness identify the witness *at the trial* as the man who committed the crime; and the Court states:

"Whether he identified him (defendant) at any other time or place, either before

**330**

or after the trial, would be immaterial, and in a sense, a self-serving declaration."

It is defendant's whole contention that the introduction of the extra-judicial identification—over defendant's vigorous objections—was so prejudicial, as to prevent him from receiving a fair trial.

In its response brief, the State asserts that any error complained of with reference to such extra-judicial identification was made harmless, when the defendant had read into the record a news story, which appeared in the Tulsa Tribune, January 14, 1966, which reported that the defendant had been arrested in Tulsa, and that he was identified by a witness. But, this item resulted from the State's rebuttal witness, whom it appears might have, testified that no story appeared in either of the Tulsa papers, concerning the defendant's arrest. Defense counsel insisted that the paper itself be introduced; and after his examination of it found one small article on the front page of the Tribune, which was read into the record.

However, the Attorney General overlooks the fact that one of the defense witnesses, who was a car dealer and who purportedly offered to buy the defendant's car the afternoon that the crime was committed, testified that he observed the article in the paper the next day; and because of the unusual name, "Prideaux" he recalled having talked with the defendant that same afternoon. This was part of defendant's alibi.

Consequently, we do not accept the Attorney General's contention of harmless error. And in so far as the record before the Court leads us to believe that this incompetent evidence may well have influenced the verdict, and deprived the defendant of a fair and impartial trial, the case is reversed and remanded back to the trial court for a new trial.

Reversed and remanded for a new trial.

BUSSEY and NIX, JJ., concur.