Gerald PRIDEAUX, Appellant,

v.

STATE of Oklahoma, Appellee.

No. A–16953.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Frasier & Frasier, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Gerald Prideaux, hereinafter referred to as defendant, was convicted in the District Court of Cherokee County, Case No. 2641, of robbery with firearms, and sentenced to five years imprisonment. Judgment and sentence was imposed on March 22, 1971, and this appeal perfected therefrom.

It was charged by information that on January 13, 1966, defendant committed the offense of robbery with firearms, in that he did take $3,800 from Rayford Williams by meanacing and threatening Williams with a .22 caliber, automatic pistol, and pearl handled .22 revolver, said taking being against the will and without the consent of Williams, while he was in fear of injury to his person.

The evidence established that Rayford Williams lived in a house on a rural acreage, four and one-half miles southwest of Peggs, Oklahoma, Cherokee County. On January 13, 1966, he left his home and went hog hunting. As Mr. Williams returned to his home, he observed a white, "pretty new," Buick automobile parked behind an old schoolhouse, about 250 yards from Williams' home. Williams, in his pickup, drove past the Buick into his own front yard. Exiting his pickup, Williams picked up some fire wood from his front yard and entered his home. Once inside his house, he was jumped by two men. According to Williams, both men were masked and both were wearing grey, khaki caps. Both men had .22 automatic pistols, and one was pearl handled. William was forced to the floor, face down. The men went through Williams' pockets and took one billfold containing approximately $800, and another billfold containing approximately $3,000. After taking Williams' money, the two men tied Williams' feet and hands. One of Williams' assailants kicked Williams in the chest. One of the assailants then asked Williams where the keys to his truck were located. Williams told them they were in his pickup in the front yard. According to Williams, the two assailants then left in his pickup. After about twenty minutes, Williams freed himself and walked to the schoolhouse behind which he found his pickup, parked where

the white Buick had been parked. Williams then drove his pickup about three-fourths of a mile to his nearest neighbor, Mr. Louie Peters.

Peters testified that on the day in question, prior to the arrival of Mr. Williams at his place, he had been in front of his home and observed a white, '64 or '65 Buick, traveling west in a direction away from Williams' home. The Buick, with two occupants, approached the front of Peters' home at a slow rate of speed, and as it passed directly in front the Buick had to stop to allow a dog to pass. At that time Peters observed that the passenger in the Buick laid his head down, so as to not be seen. Peters identified the driver of the Buick as the defendant. As the Buick drove away, Petters observed that it had a ZF license plate and that there was a small hole in the right tail light. Peters further testified that at a subsequent date he saw the identical car in Tulsa at a police garage, where it bore the license number ZF–5190.

Larry Compton, a Tulsa Police Officer, testified that on the evening of January 13, 1966, he was on the lookout for a white, '64 model Buick, reportedly involved in a robbery in Cherokee County. At approximately 2:00 a.m. the officer stopped a Buick fitting the description, which was driven by the defendant with a female companion. A search of the vehicle revealed a painter's cap and some nylon stockings.

James W. Clark, a Tulsa Police Officer, testified that he saw the automobile in question around midnight, parked in front of a club in Tulsa. The officer observed the car for approximately two hours, until two men came out of the club and one entered the Buick. The officer attempted to give pursuit, but lost the Buick. Ten minutes later the officer relocated the Buick where it had been stopped by another police vehicle. The Buick, according to the officer, was driven by the defendant.

It is defendant's first assignment that the trial court erred in permitting the po-

lice officers to testify as to the description of the defendant they had received, as such testimony was hearsay and inadmissible as an extra-judicial identification in support of this position the defendant relies upon the rule of Cothrum v. State, Okl.Cr., 379 P.2d 860 (1963), and Prideaux v. State, Okl.Cr., 473 P.2d 327 (1970), that testimony about a lineup or other extra-judicial identification is inadmissible by the State in chief. In particular, defendant cites the language of Johnson v. State, 44 Okl.Cr., 113, 279 Pac. 933 (1929), that "the testimony of the officer that from such description he arrested the defendant is hearsay and inadmissible."

The testimony, admitted over objection, which defendant attacks as inadmissible, is as follows:

"Q. Officer, Clark, with reference to the information that you obtained from the Squad Room, that was furnished you from the Squad Room, what information were you given, if any, with reference to a vehicle?

"A. A late model Buick, a 'Sixty-four to 'Sixty-six, white in color with ZF tag.

"Q. Now, with reference to this particular information, did you have occasion to see an automobile of that general description on that evening while you were on duty?

"A. Yes, sir, I did.

"Q. Where was it?

"A. It was at a club called the 518 South in Tulsa, which is located just west of 51st and Yale."

Officer Compton testified as follows:

"A. Yes, sir. There was a description of a car put out in a Squad meeting.

"Q. Do you recall now the general description of that vehicle?

"A. Yes, sir. It was a white 'Sixty-four model Buick.

"Q. And were there any other descriptions given that you can recall?

"A. Well, I think the first two digits of the tag number, or the letter prefix was given as Zebra Frank, or ZF and the tail end was supposed to be showing white."

We do not find that this challenged testimony amounted to an impermissible extra-judicial identification, nor did it constitute a hearsay description of the defendant. The officers related that they had been advised to be on the lookout for a particular vehicle, and related the description they had been given. This description was of a vehicle, not the defendant. This was hardly an immaterial and prejudicial identification of defendant, prohibited under Cothrum v. State, supra; nor does it approach testimony of an identification tainted by a prejudicial lineup, prohibited by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

It is defendant's second and final assignment that the trial court erred in failing to sustain defendant's demurrer to the State's evidence. Defendant contends that although the evidence establishes that Williams was robbed, the evidence does not prove that the defendant committed the robbery.

Upon reviewing the evidence, we are satisfied that there was sufficient evidence, although circumstantial, from which the jury could conclude that the defendant was guilty as charged. The defendant was observed leaving the scene of the crime, shortly after its occurrence. When so observed, defendant's actions and manners were such that it might reasonably be inferred that he was trying to hide his identity. It is the fundamental rule that when there is competent evidence from which the jury could reasonably conclude the defendant was guilty as charged, its verdict will not be set aside, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Williams v. State, Okl.Cr., 373

P.2d 91. Gray v. State, Okl.Cr., 467 P.2d 518. Accordingly, we find this contention to be without merit.

Having considered defendant's assignments of error, and finding them to be without merit, we conclude that the judgment and sentence should be, and the same is hereby, affirmed.

BLISS, P. J., not participating.

BUSSEY, J., concurs.