Charles Mansfield **GILLESPIE, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A-12834.

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1960.

Carroll Samara, Oklahoma City, Norman & Wheeler, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Charles Mansfield Gillespie, hereinafter referred to as defendant, was charged by information in the District Court of Oklahoma County with the crime of assault and battery. He was tried before a jury who found the defendant guilty but was unable to agree on the punishment. The trial judge sentenced defendant to five (5) years in the state penitentiary.

The testimony reveals that the complaining witness, Dorothy Rose Crawford, was a resident of an apartment house located at

2516 North Hudson, Oklahoma City. That on the 17th day of January, 1959, after midnight, she answered her apartment door in response to a tapping noise that lasted for approximately five minutes. When she opened the door a man was standing there and pushed her back through the door against a bookcase and hit her on the left forehead. After pushing and hitting the witness the assailant left as the witness fell. The complaining witness testified the assailant was wearing a brown and white top coat with a hard finish, like herringbone, wearing gray pigskin gloves and he had a handkerchief over the lower part of his face, and also wearing eye glasses with pink frames. She described her injuries as a result of the assault as follows:

"* * * I had a cut over my left eye that required seven stitches and I had small cuts over the rest of my face and I had a black eye and I had bruises on my leg."

She testified she received the cut over her eye when she was hit with the beer bottle. That she didn't know what the object was in the assailant's hand but it was brown, and she saw the shattered beer bottle on the floor after she was hit. Complaining witness at the trial was positive in her identification of defendant as the man who assailed her.

Defendant was 27 years of age, studied business administration at the University of Oklahoma; had a splendid war record, was married and engaged in the brokerage business. He vigorously denies the commission of the offense.

Defendant appeals to this Court upon three propositions of error as follows:

1. The evidence in the case was totally insufficient to justify the conviction in this case.

2. The defendant was convicted through the admission of incompetent, irrelevant, immaterial and hearsay evidence which affected the verdict and deprived defendant of a fair trial.

3. Defendant did not have a fair and impartial trial guaranteed him by the Constitution of the State of Oklahoma.

With defendant's first contention of error this Court cannot agree. Defendant's argument that there is much confusion surrounding the identification of the defendant and the description afforded by the complaining witness is true and cannot be controverted. However, defendant was pointed out and identified by the victim at the time of trial as her assailant on the night the offense was committed, which constituted sufficient basis for the jury's verdict. It is the province of the jury to determine disputed matter of fact, and their verdict will not be set aside by this Court where there is substantial evidence to support it. Hayes v. State, Okl.Cr., 292 P.2d 442; Spears v. State, 89 Okl.Cr. 361, 207 P.2d 946.

Defendant's proposition number 2 is not without merit and deserves serious consideration. His contention that certain testimony as to an identification of defendant at a police line-up was inadmissible is supported by the rule laid down in the case of Johnson v. State, 44 Okl.Cr. 113, 279 P. 933. In that case the Court said:

"* * * In the trial of a case for robbery, where the issue is whether the defendant is the person who robbed the prosecuting witness, testimony of what prosecuting witness said in identifying or describing the robber at some other time or place is not admissible as original testimony. In like manner, the testimony of the officer that from such description he arrested the defendant is hearsay and inadmissible."

In the above case the prosecuting witness in answer to a question related that she identified the defendant at the police station subsequent to the crime and before the trial.

The Court further said:

"This is not an identification of the defendant as the one who committed the robbery, but testimony of an 'extrajudicial identification,' improperly suggested."

In the case of State v. Evans, 98 Or. 214, 234, 192 P. 1062, 1068, 193 P. 927, (cited in the Johnson case, supra) the Court said:

"The issue was whether the defendant robbed the prosecuting witness. Applicable to that issue was the question whether at the trial the prosecuting witness could identify the defendant as the man who committed the crime. Whether he identified him at any other time or place either before or after the trial, would be immaterial, and in a sense a self serving declaration. It ought not to have been admitted in the first place, although no objection was made to it."

In the instant case the county attorney inquired of the prosecuting witness where she next saw the defendant (after she was assaulted) and the following answers were given:

"Q. When did you see him next? A. I saw him next Monday morning in the line-up.

"Q. What was he wearing at that time? A. He was wearing a top coat and pink glasses.

"Q. The same top coat and the same glasses? A. Yes sir."

Also, Officer Geer upon direct examination as follows:

"Q. I will ask you if you were present at the police line up held on that particular day? A. Yes sir. I conducted the line up.

"Q. How many people did you have in the line up? A. Five."

Mr. Geer further testified on re-direct examination that there was a tentative identification of the defendant at said line-up.

Defendant in his brief recites the officer's testimony extracted by the county attorney on page 92 of the case-made as follows:

"I will ask you if you had any contact with the complaining witness in regards to the identification of this defendant before the line up? A. Yes sir.

"Q. Did you ask her if she knew that particular man? A. Yes sir.

"Q. Without stating how, was there any identification made before this line-up? A. No sir, not positive.

"Q. Was there a tentative one? A. Yes sir."

In asserting this to be error, defendant cites the following authority:

"Thus, in People v. Johnson, 91 Cal. 265, 27 Pac. 663, and People v. McNamara, 94 Cal. 590, 29 Pac. 953, the testimony of an officer as to the description of the culprit given him by the prosecuting witness before the arrest in each instance was held to be hearsay, and its admission prejudicial error, for which the cases were reversed. Again, in Murphy, alias Jones v. States, 41 Tex.Cr.R. 120, 51 S.W. 940, it was held that on a trial for murder it was incompetent and inadmissible, as original evidence, to prove by a witness who was present at the killing, and only saw defendant for an instant at that time, that subsequently she picked him out and identified him at the jail, among several other inmates, as the person who committed the murder. So, also, in Commonwealth v. Fagan, 108 Mass. 471, evidence that the person who was robbed described the robber to the officer, and that the officer thereupon went in search of the defendant, was held hearsay, and not admissible to identify the robber with the defendant. And in O'Toole v. State, 105 Wis. 18, 80 N.W. 915—a case somewhat similar to the one at bar—two policemen testified to the effect that the prosecuting witness on the day after the robbery stated that plaintiff in error was the man who committed it; but the court held the admission of such testimony error, saying: 'It was placing before the jury an unsworn declaration under circumstances likely to give it great weight. The darkness and confusion surrounding the robbery justified an argument upon the improba-

bility of the prosecutor's ability to have seen his assailant sufficiently to identify him, and the declaration of defendant's identity when presented among others before complainant must be weighed with the jury upon the facts so declared, and therefore prejudiced the accused. Error was thus committed for which the judgment must be reversed'."

This extra-judicial identification was inadmissible when offered by the state, and the admission of the same has been held to be reversible error. See Williams v. State, 49 Okl.Cr. 240, 293 P. 564; Robbins v. State, 39 Okl.Cr. 289, 264 P. 841.

In the instant case it is to be noted that no objections were made to the introduction of such testimony and the defense counsel on cross examination interrogated the complaining witness at great length about the identification of the defendant during the police line up. No doubt defense counsel considered the testimony favorable because of some discrepancies revealed in the description given by the identifying witness. The court is of the opinion that failure to object and pursuing the matter at great length on cross examination takes said testimony out of the category of reversible error though it may well have influenced the verdict.

Defendant next advances the argument that defendant was denied a fair and impartial trial as a result of the actions of the county attorney during the following proceedings transpiring at the conclusion of the state's testimony and just prior to the state resting:

"The Court: You may step down, call your next witness, please. Any of the people, the following witnesses in the Court room. Read the names of the girls on the Information, Mr. Clerk.

(Thereupon the clerk read the following names: Brenda Joyce Martin, Donna Lou Anthony, Joanna Sue Roztocil, and Judy Burrows.)

"Mr. Reynolds: There is no reply thereto.

"Mr. Hyde: I am going to make this objection to the demonstration in front of the Jury for this reason. If these witnesses were subpoenaed it was the duty of the County Attorney to call them in before the Court and put them under the rule. Now, then, he undertakes to get before the Court and the Jury that he has some witnesses that are adverse to our cause and we say it is prejudicial. He owes this Court the duty not to do what he did this morning just now. He stated yesterday he wasn't going to use them.

"Mr. Reynolds: In the testimony in chief.

"Mr. Reynolds: And the rule doesn't apply to rebuttal witnesses, and you know it.

"Mr. Hyde: And the first time I knew about those witnesses was yesterday morning.

"The Court: Well, all right. Ladies and Gentlemen of the Jury, you will please disregard the fact that the witnesses names were called by the County Attorney an effort on his part to ascertain whether or not any of them might be seated in the Courtroom. You may disregard that entirely, a matter of expediency on his part to find out whether they were here or not. All right. I might say for the record that the Bailiff had called them out in the hall at the request of the County Attorney and there were several people in the Courtroom and he called in here to see whether or not they might be sitting in the Courtroom, but that has nothing to do with this lawsuit, and you will disregard it."

Defendant in substance contends that since the defendant was charged with an assault upon a girl that calling the names of additional girls who did not appear may have left the inference with the jurors that had they testified their testimony would have indicated similar attacks and would have been detrimental to the defendant, and that the court's efforts to lighten the effect pro-

duced an adverse and prejudicial opinion in the minds of the jury.

█ It is difficult to ascertain from the record whether the witnesses were called at the request of the trial judge or the county attorney. It is likewise difficult to assume the event was perpetrated as a wilful scheme to prejudice the defendant. It is obvious that the trial court was in good faith in his remarks to the jury in effort to prevent any prejudicial effect as he thoroughly admonished them not to consider the event in determining the guilt or innocence of the defendant. The procedure is not condoned by this Court, yet would be presumptuous on our part to say it was done with any malice aforethought. No doubt the event presented an opportunity for the defendant to have been prejudiced and was not conducive to the best fair trial procedure.

It is to be observed that much testimony was introduced in support of an application to suspend the sentence of defendant. A number of reputable citizens testified as to defendant's good reputation. Evidence was received as to his church affiliation, his war record, his personal and family life. The state likewise introduced a lengthy report on defendant's life compiled by the FBI which represents approximately 50 pages of the case made which was unfavorable as a whole to defendant's reputation.

█ The court in denying the application made the following remarks:

"When you go to trial in this court before a jury and you are convicted, you don't get a suspended sentence unless the jury insists on it in their verdict, and I think you are familiar with that. The next question is, how much should he receive. You just don't get a suspended sentence, *you are not gambling with me.*"

The court further said:

"Well, I am not going to suspend a sentence for any one who goes to trial before a jury in this court and is convicted, unless the jury insists upon it in their verdict. Now, everybody knows that, as do all of the other judges. All right, that's the end of that."

It is apparent that the trial court did not consider the showing made in support of the application for a suspended sentence, but denied it for the sole reason defendant had tried his cause before a jury and lost. A policy designed to deny defendant a suspended sentence solely because he demanded a jury trial is contrary to law and an unjustifiable denial of defendant's rights to have his application for a suspended sentence considered upon its merits.

In considering the application for suspension, the court must consider among other things, the showing made as to whether the defendant is a first offender, as to his previous character, and actions and as to whether it reasonably appears that defendant will abide by the terms of his probation and may be reasonably expected to be compatible with society and likewise consider society's interest. Whether the evidence before the court was sufficient to justify granting or denying the application is not the question before the court. The fact is that the court denied the application upon grounds not sanctioned by law. It was held in the case of People v. Jones, 87 Cal.App. 482, 262 P. 361 that [77 Idaho 115, 289 P.2d 315, 317]:

"The question of whether the trial court exercised its discretion in passing upon the application for probation or whether the trial court refused to exercise its discretion upon all the facts and based its refusal of probation upon a ground not sanctioned by law is a question of law reviewable upon appeal."

Also see People v. Donovan, 376 Ill. 602, 35 N.E.2d 54; State of Idaho v. Mitchell, 77 Idaho 115, 289 P.2d 315.

In the case of State v. Ellis, 70 Idaho 417, 421, 219 P.2d 953, 955, the court said:

"By the provisions of Section 19–2601, I.C. the trial court is vested with discretion to grant or refuse an appli-

cation for parole. The trial court must exercise this judicial discretion in a lawful and legal manner. He must give consideration to the application and grant or deny the same in the exercise of a sound, legal discretion. The refusal of the application must not be arbitrary and cannot be based upon mere whim or caprice nor upon any ground not sanctioned by the law." (numerous citations supporting the rule.)

A defendant must either plead guilty or have been found guilty by a jury before the question of probation can arise. To deny defendant the right to have his application considered because he asked for and received a jury trial is not sanctioned by law and is an improper denial and deprives defendant of a statutory right contrary to all concepts of the law.

█ Defendant presented capable argument upon numerous assignments of error in this case and they all have been carefully considered and the authorities cited in support of the same have been read with great care. From the readings of the record and the errors assigned and the authorities cited, we cannot feel justified in reversing the case. However, numerous irregularities occurred and had proper ob-

jection been made and exception saved, a different view may have been required. The jury was evidently unable to agree upon the punishment and the same was left to the court. The punishment could have been one year in the county jail, up to five years in the penitentiary. The court assessed the maximum. Because of the irregularities bordering on error and especially the admission of extra-judicial identification, the court is of the opinion that justice would be better served if the sentence was modified from five years in the Oklahoma State Penitentiary to three years in the Oklahoma State Penitentiary and otherwise affirmed.

Therefore, the conviction of appellant of the crime of assault with a dangerous weapon modified to three years in the Oklahoma State Penitentiary and otherwise affirmed. The order of the trial court denying application for a suspended sentence is hereby reversed and the cause is remanded to the trial court with directions to set aside the sentence heretofore pronounced and to consider defendant's application for a suspended sentence and grant or deny the same upon grounds sanctioned by law and to again pronounce sentence as prescribed by this opinion.

POWELL, P. J. and BRETT, J., concur.