Bobby Ray JONES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–458.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1976.

Francis M. Pickel, Jr., Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Bobby Ray Jones, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McIntosh County, Case No. F–75–51, for the offense of Receiving Stolen Property in violation of 21 O.S.1971, § 1713. His punishment was fixed at five (5) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Hollis Dailey testified he was a cabinet maker. On April 10, 1975, a sander, saw and vibrator sander were taken from his shop located in Eufaula, Oklahoma. He then identified State's Exhibits Nos. 1, 2, and 3 as being the sander, saw and vibrator sander taken without his permission from his shop on April 10, 1975. Witness Dailey finally testified that the next time he saw these tools was at the Sheriff's office on the following Saturday night.

Glen Parratt testified he was employed as a District Court reporter for the State of Oklahoma and lived in Shawnee, Oklahoma. He then identified State's Exhibit No. 4, as being a C.B. radio taken from his boat without his permission.

Norman Rice testified he was 22 years-old and lived in Eufaula, Oklahoma. During the month of April, 1975, he broke into Mr. Dailey's Cabinet Shop. He then identified State's Exhibit Nos. 1, 2 and 3, as being two sanders and a Skil saw he took without permission from the cabinet shop. Witness Rice further testified that he sold State's Exhibits Nos. 1, 2, and 3 to the defendant receiving $30.00. A person named "Stoney" received $20.00 and he kept $10.00 for himself. He was convicted, upon a plea of guilty, to the charge of Burglary in the 2nd degree and was presently on parole.

Stoney McGuire testified that he was acquainted with Norman Rice. In April of 1975, he, at Rice's request, met in front of a furniture store on Main Street in Eufaula, Oklahoma. Rice showed him two sanders and an electric saw. Rice stated that he found the items under a blue car parked in the alley. Rice asked witness McGuire if he wanted to buy the items; McGuire stated he only had $10.00. McGuire gave Rice $10.00 and told him (Rice) he would give him $10.00 more after he sold the items. McGuire then walked to Jolly Bob's (defendant's business) and asked the defendant if he would loan him some money on the items. Witness McGuire took the Skil saw and one sander in the front and the defendant let Norman Rice in the back door with the other sander. After the defendant checked the articles he gave them $30.00. McGuire told the defendant that he would try to get the items back, however, there was neither a set time nor an interest rate set. Finally Witness McGuire testified the defendant did not inquire as to where he obtained the items.

Leo Williams testified he was the Sheriff of McIntosh County in the month of April, 1975. On April 12, 1975, he was called to his office as a person had been picked up carrying a tool box and was going toward the defendant's place of business. The person was interviewed by Sheriff Williams and the Assistant District Attorney, Allen. Thereafter, Sheriff Williams and Mr. Allen proceeded to the defendant's place of business. Mr. Allen informed the defendant that they were looking for some saws and a sander that had been brought into the place of business and wanted to look around. The defendant stated that they could go ahead and look around. Mr. Allen advised the defendant that they had a waiver and wanted to know if the defendant would sign the waiver so they could search the building. The defendant agreed to sign the waiver and did sign it. Sheriff Williams and Mr. Allen then looked around until they came to a locked door. The defendant was asked if he had a key and he replied that he did not. The defendant then went downstairs and Sheriff Williams and Mr. Allen took the hinges off the locked door

and observed the saw and sander inside. They then replaced the door and went downstairs and arrested the defendant and advised him of his Constitutional rights. They then asked the defendant for his keys, which he gave to them. One of the keys opened the door and State's Exhibits Nos. 1, 2, and 3 were removed from the room.

Larry Allen testified he was employed as an Assistant District Attorney for McIntosh County. On April 12, 1975, he and Sheriff Williams received information that certain tools stolen from Hollis Dailey's carpenter shop were in the defendant's place of business. He and the Sheriff, at approximately 11:30 p. m., went to the defendant's place of business. Witness Allen advised the defendant that they had reason to believe that certain items were stolen from Hollis Dailey and that they would like to look around for them. The defendant stated "Why, sure, go ahead and look." Allen then advised the defendant he had a waiver of demand for search warrant and it would be better if he (defendant) signed it. The defendant then signed the waiver. Allen then advised the defendant that he had a right to force them to get a search warrant but since he signed the waiver he waived that right. The remainder of Witness Allen's testimony was substantially the same as Sheriff Williams.

The State then rested.

The defendant then took the stand and testified that Sheriff Williams and Assistant District Attorney Allen came to his place of business and that Allen advised him that he (Allen) wanted to search the premises. Defendant stated that it was all right with him. Allen then produced a piece of paper from the inside of his coat pocket, unfolded it and told him that he would have to sign it and he did. The defendant testified that he did not know what it was, and that he never read it. Thereafter, the Sheriff and Allen proceeded to look around his place of business.

When they came to the locked door, he was asked what was in the room. The defendant described various tools that belonged to him, paint jars and other odds and ends. The defendant then testified that two of the items entered into evidence were in the locked room, but one, the small sander, was still below the counter. The defendant further testified that he had loaned $30.00 on the items. He had previously loaned money to one of the boys.

Several months prior to this, he had loaned $5.00 on a C.B. radio and had inquired if the radio was "hot" and was told it was not. He finally testified that he had pawn slips on all the items he took and loaned money on.

On cross-examination, the defendant testified that his curiosity was not raised when a 14 year-old kid came in his place of business and wanted to pawn some power tools. Finally on cross-examination he denied that one of the boys was let in the back door, both had come in the front door.

The defendant then rested.

The defendant's first assignment of error asserts that the trial court erred in overruling his demurrer at the preliminary hearing. This Court has previously held that the evidence at the preliminary hearing is sufficient to bind the accused over if the State shows that a crime has been committed, and there is probable cause to believe the defendant committed the crime. See *Kovash v. State*, Okl.Cr., 519 P.2d 517 (1974) and cases cited therein.

After carefully reviewing the preliminary transcript in the instant case, it is our opinion that the evidence presented by the State was sufficient to bind the defendant over for trial. We therefore find the defendant's first assignment of error to be without merit.

The defendant's second assignment of error asserts that the trial court erred in overruling his motion to suppress. The

record reveals that the trial court held a hearing outside the hearing of the jury on defendant's motion to suppress. Both the State and the defendant presented evidence concerning the execution of the waiver of the right to require a search warrant and the facts surrounding the search of the defendant's premises.

■ The trial court's ruling on a motion to suppress evidence obtained through a search and seizure wherein a waiver of the right to require a search warrant has been executed by the defendant will be sustained by this Court on appeal, where testimony as to the facts of the waiver are conflicting and there is competent evidence in the record to sustain the trial court's findings. See *Seabolt v. State*, Okl., 356 P.2d 338 (1960).

■ In the instant case we find that the evidence presented by the State and that presented by the defendant was conflicting; however, there was sufficient competent evidence which sustained the trial court's findings.

■ The defendant's third assignment of error asserts that the trial court erred in allowing the State to introduce evidence that the defendant, approximately eight months before the instant case, had been in possession of a stolen C.B. radio, as this evidence constituted evidence of other crimes and therefore was inadmissible. In the case of *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970), this Court held in the first paragraph of the Syllabus:

"The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or ac-

cident, (4) identity of person charged with the commission of the crime for which an accused is [sic] put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

In the instant case it is our opinion that the complained of evidence was properly admitted as showing a common scheme or plan.

■ The defendant's fourth assignment of error asserts that the prosecuting attorney's closing argument was inflammatory and improper. We have carefully reviewed the transcript of the closing argument and find that some of the complained of statements of the prosecuting attorney were not objected to by the defendant. When an objectionable statement is made by the prosecuting attorney, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the motion for new trial. When this is not done, the matter cannot be presented for the first time in the motion for a new trial and the petition in error on appeal. *Overstreet v. State*, Okl.Cr., 483 P.2d 738 (1971). We do not consider the other complained of argument cited by the defendant to be flagrant and of such a prejudicial nature as to require reversal. See *Montgomery v. State*, Okl. Cr., 447 P.2d 469 (1968).

■ The defendant's fifth and sixth assignments of error will be discussed together. In these two assignments of error the defendant contends that the trial court abused its discretion in sentencing the defendant and that the punishment imposed was excessive.

The record reveals that the defendant requested a pre-sentence investigation report to be made prior to sentencing. The

pre-sentence report recommended that the defendant be given probation. On the day of sentencing the defendant requested that his sentence be suspended. The trial court made the following statement in reply to the defendant's request for probation:

"Well, I have been on this bench almost five years, will be the 11th day of next month and I received most of my training under a Chief Judge named Bob Bell and he—I have seen him many, many times or heard him many, many times make the statement that he would not go against the recommendation of a jury. I feel the same way as Judge Bell, had this case had a jury been waived and tried to me I might have considered this, but the people of McIntosh County that are summoned for jury duty when the case has been tried and they go to the jury room to deliberate its in their hands at that time and I am not going to go against the jury's recommendation on their sentence verdict in this case."

This Court in the case of *Gillespie v. State,* Okl.Cr., 355 P.2d 451 (1960) stated:

"A defendant must either plead guilty or have been found guilty by a jury before the question of probation can arise. To deny defendant the right to have his application considered because he asked for and received a jury trial is not sanctioned by law and is an improper denial and deprives defendant of a statutory right contrary to all concepts of the law."

It is therefore our opinion that the trial court's order denying the defendant's application for a suspended sentence is hereby reversed and remanded to the trial court with direction to consider the defendant's application for a suspended sentence and grant or deny the same upon grounds sanctioned by law. The judgment and sentence appealed from is *AFFIRMED* in all other respects.

BRETT, P. J., and BLISS, J., concur.