590 P.2d 692 (1979)
In the Matter of M. W. N., a juvenile.
No. J-78-258.
Court of Criminal Appeals of Oklahoma.
February 8, 1979.
O. B. Johnston, III, Vinita, for appellant.
Sidney D. Wise, Dist. Atty., Larry R. Brooks, Asst. Dist. Atty., Craig County, Vinita, for appellee.

*693 OPINION
BUSSEY, Judge:
M. W. N., a juvenile, appeals from an order of the Juvenile Division of the District Court, Craig County, Oklahoma, waiving jurisdiction over him and certifying him to stand trial as an adult for the offense of Arson in the Second Degree in Case No. JF-78-2, pursuant to 10 O.S.Supp. 1977, § 1112. From said order a timely appeal has been perfected to this Court.
The State's first witness was Charles Guthrie who testified that at approximately 8:30 or 9:00 p.m. on December 31, 1977, he observed a nearby hay barn on fire. Undersheriff Carol Chaney then testified that he arrived on the scene at approximately 10:00 p.m. on the night of December 31, 1977, and that he observed a barn which was completely engulfed by flames. The next witness was Wade H. Kornegay who testified that a hay barn belonging to him had been destroyed by fire on the night of December 31, 1977. Phil McDrummond, owner of the hay stored in the barn, testified that he had over 6,000 bales of hay in the barn at the time of the fire.
The State then called Donald Scott who testified that he had been with the juvenile and Buddy Owens on December 31, 1977. The witness related that he, the juvenile and Buddy Owens had been riding around town, drinking beer on the night in question and that they went north of town to a barn where the juvenile and Owens got out of the truck and walked to the barn. The witness further related that he remained in the truck which was approximately 50 yards from the barn and, further, that he had seen the juvenile and Owens both strike matches on the barn. Finally, the witness testified that the barn began to burn and that he, the juvenile and Owens then drove back to town. On cross-examination, the witness admitted that he had not actually seen the juvenile strike any matches, but that he just knew the barn was burning.
The next witness for the State was Ms. Nancy Moran, a juvenile counselor with the Court Related Community Services. She testified as to the juvenile's past adjudications as a juvenile in need of supervision and, further, that he had been placed in the custody of the Department of Social and Rehabilitative Services on three prior occasions. Finally, Ms. Moran testified, over objection, that in her opinion the juvenile should be certified as an adult because he could not be rehabilitated in the juvenile system.
The juvenile's father was then called as the only witness for the defense. He testified that his son had a good emotional attitude at home, but that his attitude was different when he was around other boys. He further testified that his son was married and that he was frightened about the certification hearing because he knew he had done wrong. Finally, the juvenile's father testified that in his opinion the juvenile was not a fully mature adult and that he should not be certified to stand trial as an adult.
*694 In his first assignment of error, the juvenile contends that in making its decision the court improperly considered a certification study which had not been admitted into evidence and, as a result, he was not given a fair opportunity to examine, criticized and refute the findings in the study. In C.P. v. State, Okl.Cr., 562 P.2d 939 (1977), we held that a court's independent use of extrajudicial records without affording interested parties a fair opportunity to examine, criticize and refute findings in such a report and without informing counsel for the juvenile what reports were being considered, constituted a denial of due process. In that case, the certification order specifically stated that the court independently considered a report which was not in evidence. The present case is readily distinguishable from C.P. v. State, supra, for two reasons. Here, the certification study was made a part of the record even though it was not admitted into evidence. However, there is nothing reflected in the certification order indicating that the court considered the study in its finding of nonamenability to rehabilitation. The second reason and the one we find highly significant is the fact that Ms. Moran, the very person who prepared the study, was called as a witness by the State for the purpose of introducing evidence through her testimony as to the juvenile's nonamenability to rehabilitation. Ms. Moran gave direct testimony of substantially the same facts contained in the study and was subjected to extensive cross-examination by defense counsel who had a copy of the study. Based on the foregoing, we are of the opinion that the juvenile, through cross-examination of the very person who prepared the study, did have a fair opportunity to examine, criticize and refute the findings contained in the study and, furthermore, even if the court did independently consider the extrajudicial report, such would not constitute error, because the report was merely cumulative to the direct testimony of Ms. Moran.
The second assignment of error is that the court found prosecutive merit solely on the uncorroborated testimony of Donald Scott, an alleged accomplice. For the purpose of this assignment of error, we assume without deciding that Donald Scott was an accomplice. In support of this contention, the juvenile relies on Matter of J.S., Okl.Cr., 556 P.2d 641 (1976), wherein we held that prosecutive merit cannot be found solely on the uncorroborated testimony of an accomplice. The holding in Matter of J.S. was based on State v. Wofford, Okl.Cr., 549 P.2d 823 (1976), where we held that the uncorroborated testimony of an accomplice would not support a finding of probable cause at a preliminary hearing for an adult. In Matter of J.S., decided shortly after Wofford, we determined that there was no substantial reason or logic to allow prosecutive merit to be found in certification hearing solely upon the uncorroborated testimony of an accomplice when the same testimony at a preliminary hearing for an adult would not support a finding of probable cause. Subsequent to our holdings in Wofford and Matter of J.S., we decided the case of Bennett v. State, Okl.Cr., 570 P.2d 345 (1977), where we expressly overruled Wofford and held that 22 O.S. 1971, § 742, requiring that an accomplice's testimony be corroborated, only applied to a trial on the merits in which a conviction could result and that the statute did not require corroboration at a preliminary hearing to determine if probable cause existed. Since our holding in Matter of J.S. was the logical result of Wofford, which was subsequently overruled by Bennett, we now hold that 22 O.S. 1971, § 742, does not require corroboration of an accomplice's testimony at the prosecutive merit stage of a certification hearing, and, furthermore, we expressly overrule Matter of J.S., supra.
In his third assignment of error, the juvenile contends he was denied due process because the written order certifying him to stand trial as an adult was not made a part of the record until a date after the record on appeal was certified as complete. An examination of the record reveals that it was certified as complete on April 20, 1978, however, the certification order was not filed until April 28, 1978. The juvenile contends that this attempt to comply with *695 10 O.S.Supp. 1977, § 1112, was too late and constitutes a denial of due process. We are unable to agree with this contention because the Rules of the Court of Criminal Appeals, 22 O.S.Supp. 1974, Ch. 18, App., rule 1.14, provides as follows:
"After an appeal has been duly and regularly lodged in this Court upon application of either appellant or appellee or upon this Court's own Motion, the majority of the Court may within its discretion direct a supplementation of the record when necessary for a determination of any issue properly raised on appeal, or when necessary may direct the trial court to conduct an Evidentiary Hearing on said issue."
The foregoing rule gives this Court discretion to order supplementation of the record on its own motion. We must now determine whether or not this is a proper case to exercise such discretion. The record reveals that the juvenile was furnished a copy of the certification order prior to filing his petition in error. Although the written order was not in the record prior to the same being certified as complete, a certified copy of the order was included in the record on appeal sent to this Court. Since the juvenile was provided with a copy of the order prior to filing his petition in error, we are of the opinion that he had an adequate opportunity to attack the findings contained therein and, furthermore, since the order is presently before this Court and there is no prejudice to the juvenile's rights, we hold that the record has been properly supplemented and, accordingly, find the juvenile's third assignment of error to be without merit.
For the foregoing reasons, the order of the Juvenile Division of the District Court is hereby AFFIRMED.
CORNISH, P.J., dissents.
BRETT, J., concurs.
CORNISH, Presiding Judge, dissenting:
I disagree with the majority in overruling Matter of J.S., Okl.Cr., 556 P.2d 641 (1976). Because of the seriousness of the proceeding I believe that the testimony of an accomplice should be corroborated before it can be admitted. In order to place this issue in proper perspective, it is important to consider its background.
Title 21 O.S. 1971, § 742, requires that no person can be convicted of a crime on the uncorroborated testimony of an accomplice. The Legislature has determined that an accomplice's testimony is not sufficiently reliable, without corroboration, to establish a defendant's guilt beyond a reasonable doubt.
However, the cases clearly hold that at the preliminary examination the State need not prove beyond a reasonable doubt that a defendant is guilty of the crime charged.[1] All that is required is that the State present sufficient evidence to establish that there was a crime committed, and that there was probable cause to believe that the defendant committed that crime.[2] This Court has on several occasions recognized a presumption that the State will present a stronger case at the trial than at the preliminary examination.[3]
The question with regard to a preliminary examination then becomes whether the uncorroborated testimony of an accomplice is sufficiently reliable to establish the commission of a crime and to establish sufficient cause to believe that the defendant committed it. One consideration is the function of the preliminary examination. If there is an initial determination of probable cause, then a threshold can be established regarding the likelihood of success of the State's prosecution. Where that threshold cannot be met, the case can be dismissed *696 at an early stage. Thus, this extra step in a criminal proceeding can, in the long run, result in a savings in time and expense for the public, both as represented by the State, and as comprised of the private individuals who are parties in such proceedings.
The same factors which cause an accomplice's testimony to be questioned at a trial tend to weaken that person's credibility at a preliminary examination: by shifting the blame to another person, the alleged accomplice can get a reduced charge, or perhaps even immunity. There is a grave risk in accepting such testimony without support. On the other hand, the probable cause threshold in a preliminary examination is not really very high.
In State v. Wofford, Okl.Cr., 549 P.2d 823 (1976), this Court held that corroboration was required to support a finding of probable cause at a preliminary hearing. Then in Bennett v. State, Okl.Cr., 570 P.2d 345 (1977), this Court held that such corroboration was not required. That issue is not now before the Court, and I express no opinion as to it.
The issues are very similar in juvenile proceedings. An adjudicatory hearing on a delinquency petition serves the same function as a trial in a criminal proceeding; a final determination is made on all fact questions, including that of whether the juvenile committed the acts charged. In view of the finality of the proceedings, it is appropriate to apply § 742, supra, and insist on corroboration of an accomplice's testimony. The Court has done this in Smith v. State, Okl.Cr., 525 P.2d 1251 (1974).[4]
The findings made in a certification hearing are very much like those made at a preliminary examination. Aside from the issue of amenability, the court must determine whether a crime has been committed and whether there is probable cause to believe that the juvenile committed it. Here, too, there are justifiable grounds for mistrusting the unsupported testimony of an accomplice; perhaps even more so with a juvenile than with an adult accomplice.
There is, however, an important difference between a certification hearing and a preliminary examination. At a preliminary examination the magistrate determines whether a criminal proceeding which has already begun with the filing of an information is to continue. The Court, at a certification hearing, determines whether the juvenile proceedings against a child are to be terminated, and an adult criminal proceeding begun. This is a drastic step. The existence of a separate Juvenile Code evidences the Legislature's decision that children are not, as a rule, to be treated as adults. While the purpose of criminal proceedings is to punish offenders and to deter others from committing offenses, an underlying assumption of juvenile proceedings is that children often need assistance in determining what is right and what is wrong:
"... The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment... ." Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
The transfer of a juvenile from the jurisdiction of the juvenile court to the adult criminal court is the most severe sanction that can be imposed upon a child. It should be done in the most careful manner possible. Although the standard of proof in a certification hearing is probable cause, rather than beyond a reasonable doubt, I believe that the critical importance of the procedure requires corroboration of an accomplice's testimony.
For the above and foregoing reasons I do not believe the holding of the majority is *697 correct. Therefore, I respectfully dissent to this decision.
NOTES
[1] McCurdy v. State, 39 Okl.Cr. 310, 264 P. 925 (1928); Morgan v. State, Okl.Cr., 569 P.2d 474 (1977).
[2] Title 22 O.S. 1971, § 264. See also Ex parte Miller, 29 Okl.Cr. 301, 233 P. 775 (1925); and Jones v. State, Okl.Cr., 557 P.2d 447 (1976).
[3] McAllister v. State, 97 Okl.Cr. 167, 260 P.2d 454 (1953); Morgan v. State, supra.
[4] Some states have refused to apply the corroboration requirement to delinquency cases, but these cases have been severely criticized. See, for instance, In Re R.C., 39 Cal. App.3d 887, 114 Cal. Rptr. 735 (1974), and in 14 Santa Clara Lawyer 881 (1974); and Matter of S.J.C., Tex., 533 S.W.2d 746 (1976), criticized in 8 Texas Tech L.R. 466 (1976), and in 29 Baylor L.R. 343 (1977).