**Henry Earl SHRIVER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–518.**

Court of Criminal Appeals of Oklahoma.

May 14, 1980.

As Corrected May 20, 1980.

Rehearing Denied June 13, 1980.

Certiorari Denied Nov. 10, 1980.

See 101 S.Ct. 399.

Stephen Jones, Enid, for appellant.

Jan Eric Cartwright, Atty. Gen., Danny K. Shadid, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Henry Earl Shriver, hereinafter referred to as defendant, was charged by information in Case No. CRF–77–3144, with the crime of Bribery of a Public Official, in violation of 21 O.S.1971, § 381, in the District Court of Oklahoma County, Oklahoma. The jury found the defendant guilty and assessed his punishment at imprisonment in the Oklahoma County jail for a period of one (1) year and a fine of Three Thousand Dollars ($3,000.00). From this judgment and sentence the defendant appeals.

Joe B. Barnes, the State's first witness, stated that he was the present County Treasurer of Oklahoma County, having assumed office May 1, 1976. He explained that it was the function of the County Assessor to make an estimate of fair market value of each piece of real property within the county and then determine the property's net assessed value, which is generally 20 percent of the former. A tax roll is then prepared which contains the legal description of each property, the owner's name, and the net assessed value. The tax roll is transmitted to the County Treasurer's Office which multiplies the tax rate times the net assessed value to arrive at the tax assessment of each property.

Barnes stated that his predecessor in office for the immediately preceding seven years was Jack Blackwell and that Don Wilson was the County Assessor during this period. Wilson had a policy to permit some people to file a "Complaint of Erroneous Assessment and Petition for Correction" and secure approval of a reduced assessment by the Board of Tax Roll Corrections. Blackwell, as County Treasurer, would then make a refund to the taxpayer. Blackwell would pay a claim for refund that was filed more than one year from the date the tax was paid, although this is contrary to the statute which limits refunds to claims submitted not more than one year from payment of the tax, 68 O.S.1971, § 2479. On cross-examination, the witness testified that during the seven years prior to his assuming office thousands of taxpayers obtained corrections to the tax rolls through this scheme. Further, the witness explained, the issue of the value of a particular property is not among the 17 statutory grounds which authorizes the Board of Tax Roll Corrections to adjust the assessment and tax downward. If the question of value was raised by the owner, the issue must have been presented to the County Equalization Board. Plus during the period in question, Barnes testified, the Board of Tax Roll Corrections did not hold regular meetings as required by statute.

The information alleged that Roy Melton was the public official who took a bribe of $800.00 from the defendant. In testifying for the State, Roy Melton related that from January, 1967, to August, 1977, he worked in the office of the County Assessor, Don Wilson. He was Chief Appraiser for the first three and a half years and Director of Business Personnel for the remainder. Melton first met the defendant in March, 1967, when the defendant came to the Assessor's

Office. He was instrumental in securing a reduction in tax assessment on property owned by the defendant at that time, and the two thereafter met periodically in the courthouse cafeteria or in the County Assessor's Office.

The defendant was part owner of an office building located at 4335 N. Classen Boulevard in Oklahoma City. The building permit was issued in May, 1972, and the building was substantially completed in February, 1973. In 1974 Melton assisted the defendant by causing the assessed value of this building to be taken off the tax roll of 1973.[1] The adjustment was made on the ground that the building was not complete as of January 1, 1973. Melton agreed to make the same adjustment on the 1974 tax roll, but for some unexplained reason this was not accomplished. The mortgagee, Pilot Life Insurance Company, paid the taxes on the full assessed value on January 13, 1976, for the 1974 tax year.[2] The life insurance company did not attempt to secure an adjustment in the 1974 valuation. The assessed value of the building was completely taken off the tax roll of 1975.[3] And the land and building were assessed at partial value for 1976 and 1977.[4]

The other office building involved in this proceeding in which the defendant was part owner is situated at 4301 N. Classen Boulevard. The building permit was issued in August, 1973, and the building was completed in May, 1974. The assessed value of the property for 1974 was $7,030.00 and tax was $644.86. In 1975 the assessed value was $93,645.00 and the tax was $8,591.93, which was paid by the mortgagee, Pilot Life Insurance Company, on June 1, 1976. The insurance company attempted to obtain a 1975 tax roll correction which would have eliminated the assessed value of the building, but County Treasurer Joe B. Barnes advised the life insurance company that the claim was not timely filed, as it was not filed within one year from the date the tax was paid. The property was assessed in 1976 and 1977 at $93,645.00, and no attempt was made to reduce this value.

The defendant's residence was completed in June or July of 1975. The assessed value for 1974 and 1975 was $500.00 and the tax was $52.00 for each year. In 1976 the assessed value was $14,240.00 and the tax was $1,488.79. A tax roll correction dated January 7, 1977, and signed by Melton, reduced the 1976 valuation to $2,000.00 and the tax to $209.10.

Melton testified during cross-examination that he had advised the defendant he would cause the valuation of the property at 4335 N. Classen Boulevard to be reduced for 1974, and when this was not done he saw that the valuation of this property was reduced for 1975 and 1976 and reduced the valuation of the defendant's home for 1976.

In 1968 the defendant loaned Melton $2,885.94, which was secured by a promissory note and mortgage signed by Melton and his wife. The loan was used to pay off an indebtedness Melton owed to one C. L. Edmonds. Melton repaid the loan as agreed. In 1969 the defendant loaned Melton $1,200.00, secured by a promissory note and mortgage signed by Melton and his wife. And this loan was repaid as agreed.

Melton testified that the defendant asked him to come by his office in February, 1977. At this meeting, the defendant gave the witness $800.00 as a gift to show his appreciation for Melton's efforts on his behalf. He never repaid the $800.00, nor was he asked to do so. In May, 1977, according to the witness, the defendant gave him $1,500.00 as a loan, which he subsequently repaid.

---

1. The 1973 tax roll correction reduced the assessed value from $33,250.00 to $3,000.00 and the tax from $2,989.84 to $269.78.

2. The 1974 assessed value was $33,250.00; tax paid was $3,050.02.

3. The 1975 tax roll correction reduced the assessed value from $33,250.00 to $3,000.00 and the tax from $3,050.69 to $275.25.

4. 1976—assessed value $15,000.00; tax—$1,385.25.
 1977—assessed value $21,250.00; tax—$1,191.06.

Toward the conclusion of his appearance, Melton testified that his business dealings with the defendant influenced him to use his office to secure reduced assessments for the defendant; and that although similar favors were extended over the years to many people who never loaned him money, the extent of the favors extended to the defendant were greater because of their business dealings.

The defendant, testifying in his own defense, stated that in February, 1977, he agreed to meet Melton in his office in the Glenn Justice Building at 4335 N. Classen Boulevard. Melton asked for the meeting and came to the office between 10:00 a.m. and 12:00 noon. Melton requested a loan of a little over $2,000.00. Shriver told him he was having business problems and could not do it. Ultimately, Melton reduced his request to $800.00, and the defendant agreed to make the loan. Shriver was not sure if he gave Melton the money at that time by check or in cash. He did state that he did not ask Melton to sign a promissory note because he had in the past always repaid his obligations as agreed. In May or June of that year, the defendant stated, he loaned Melton an additional $1,500.00 which Melton never repaid.

The defendant denied that the various reductions in assessments he secured with Melton's assistance were the result of his having loaned money to Melton or as the result of money paid to Melton. Rather, the defendant maintained that the adjustments were made for him and thousands of other people as the result of official policy of the County Assessor. He stated that while Don Wilson was the County Assessor, the office had developed official policies favoring local real estate developers. These policies had been developed in response to political considerations, economic considerations, and Mr. Wilson's preference for local business developers over out-of-state business trusts. The County Treasurer during that period, Jack Blackwell, also maintained official policies designed to favor local real estate developers and owners.

As County Treasurer, Mr. Blackwell followed a policy of allowing tax refunds to real estate developers whose property had, up to two years previously, received a downward adjustment in its tax assessment. As the Oklahoma County Assessor, Mr. Wilson followed a liberal policy of permitting local real estate developers various tax breaks in the tax assessment of property under construction. A developer could file a Complaint of Erroneous Assessment and Petition for Correction and if the developer were "credible," the petition for correction was routinely granted and, if owing, a refund made. The result of these office policies was that it was relatively easy for a local developer to obtain a downward adjustment in the tax assessment of property for up to two previous years simply by filing a Complaint of Erroneous Assessment and Petition for Correction.

The defendant's first assignment of error is the court's refusal to give the defendant's requested instructions 24 and 25. Defendant's requested instruction number 24[5] covers the misdemeanor of entering into an unlawful agreement with a county assessor to obtain a lower assessment, as provided in 68 O.S.1971, § 2477, to wit:

"It shall be unlawful for any County Assessor, Deputy County Assessor, member of a County Board of Equalization or Board of County Commissioners, or mem-

5. Defendant's requested instruction number 24:

"You are further instructed that under the laws of the State of Oklahoma it is unlawful for any county assessor, deputy county assessor, member of a county board of equalization, to enter into any agreement or understanding with the owner or agent of any taxable property whereby such property is to be assessed lower proportionally than other taxable property in the same county, as an inducement to have such property brought into and kept in such county or for any other reason. Any person entering into such unlawful agreement or understanding including the owner or agent of the property involved, shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $50.00 nor more than $500.00, or by imprisonment in the county jail for not less than thirty (30) days, nor more than six (6) months, or by both such fine and imprisonment."

ber or duly authorized representative of the Oklahoma Tax Commission or State Board of Equalization, to enter into any agreement or understanding with the owner or agent of any taxable property, whereby such property is to be assessed lower proportionately than other taxable property in the same county, as an inducement to have such property brought into or kept in such county, or for any other reason. Any person entering into any such unlawful agreement of understanding, including the owner or agent of the property involved, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Fifty Dollars ($50.00), and not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for not less than thirty (30) days or more than six (6) months, or by both such fine and imprisonment."

Defendant's requested instruction 25[6] directs the jury to consider whether the defendant was guilty of the misdemeanor under Section 2477 above, if they failed to find or entertained a reasonable doubt as to the defendant's guilt of bribery as charged.

■ The general bribery statute under which the defendant was charged is 21 O.S. 1971, § 381, which provides as follows:

"Whoever, corruptly gives, offers, or promises to any executive, legislative, county, municipal, judicial, or other public officer, including peace officers and any other law enforcement officer, or any person assuming to act as such officer, after his election or appointment, either before or after he has qualified or has taken his seat, any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision, or judgment on any matter, question, cause, or proceeding which then may be pending, or may by law come or be brought before him in his official capacity, or as a consideration for any speech, work, or service in connection therewith, shall be punished by imprisonment in the State Penitentiary not exceeding five (5) years, or by a fine not exceeding Three Thousand Dollars ($3,000.00) and imprisonment in jail not exceeding one (1) year."

The defendant argues that 68 O.S.1971, § 2477, constitutes a lesser included offense within 21 O.S.1971, § 381, and that he was therefore entitled to the instructions pertaining thereto. We agree with the defendant's authorities to the extent that a jury should be instructed as to lesser included offenses when the evidence warrants. However, we find that Section 2477 of 68 O.S., Revenue and Taxation, is not a lesser included offense within the crime of Bribery of a Public Official. It is a separate and distinct offense from the crime charged. We are persuaded that the legislative history and language of Section 2477 limits the statute's application to personal property. The 1910 statute specifically referred to personal property. Although the statute in its present form does not specifically refer to personal property, it is substantially the same as the old law. The current statute makes it a crime for a county assessor to enter into an agreement with the owner or agent of taxable property to tax such property lower proportionately

---

**6.** Defendant's requested instruction number 25:

"If you find beyond a reasonable doubt that the Defendant in the month of February, 1977, in Oklahoma County, Oklahoma, did unlawfully, willfully, and feloniously bribe deputy assessor Roy Melton as defined herein, then you shall find the Defendant guilty of the crime of bribery and shall fix the punishment as defined herein.

"However, if you fail to so find, or if you entertain a reasonable doubt thereof, you shall next consider whether the Defendant is guilty of the crime of agreement or understanding as to lowered assessments as defined herein.

"If you find beyond a reasonable doubt that the Defendant did commit the crime of entering into an agreement or understanding to have the taxes on the property in question lowered proportionally, on the date and place alleged in the information, you shall find him guilty of such offense and fix his punishment by confinement in the county jail for not less than thirty (30) days nor more than six (6) months and/or fine of not less than $50.00 nor more than $500.00.

"However, if you fail to so find, or have a reasonable doubt thereof, you shall find the Defendant not guilty."

than other taxable property in the county *"as an inducement to have such property brought into or kept in such county."* (Emphasis added) The emphasized language implicitly limits the agreement or understanding to the taxation of personal property. Therefore, we find the defendant's first assignment of error to be without merit.

The defendant's second assignment of error is the denial of the defendant's request for an evidentiary hearing to prove an agreement by the District Attorney made during pretrial plea negotiations that no reference would be made by the prosecutor to the $1,500.00 loan.

Immediately following Melton's account of the $800.00 gift, the District Attorney asked the witness if he had any other personal dealings with the defendant after that time. The witness stated that in May, 1977, he received $1,500.00 as a loan from the defendant. When the prosecutor asked the witness to relate the circumstances, the defendant's attorney approached the bench and a conference in chambers ensued.[7] Upon conclusion of the conference, the court overruled the defendant's motion for a mistrial and denied a defense request for an evidentiary hearing. During conference in chambers, Stephen Jones, the defendant's attorney, told the court of a meeting prior to trial in the office of Assistant District Attorney James P. Laurence. Present, in addition to Laurence, was Assistant District Attorney Larry E. Joplin and Oklahoma City Police Department Sergeant Charles Acox. Jones told the court that at this meeting he stated his client was willing to plead to two misdemeanor charges and, in return, he would furnish information of transactions in which money was paid to persons in the County Assessor's Office. In particular, according to Jones, he mentioned $1,500.00 paid to Melton by the defendant, who was acting as a go-between for others. The prosecutors indicated they were interested and would be in touch. Two days later, Acox and Oklahoma City Police Department Lieutenant Kenneth R. Smith met with Jones and told him they had authority to make arrangements in the event there was a plea bargain and, according to Jones, it was agreed that no reference would be made at trial of the $1,500.00 transaction, whether or not a plea bargain was struck. Subsequently, plea negotiations were terminated.

Distict Attorney Andrew M. Coats told the judge in chambers that he did not learn of this particular transaction from his staff or from those in the Police Department but rather from Melton. Mr. Laurence told the judge that during his discussions with Mr. Jones he did not remember a specific amount being mentioned but rather a discussion of a course of conduct. The judge then denied the defense request for an evidentiary hearing to prove the agreement as contended by Mr. Jones, and ruled the testimony admissible.[8]

■ Title 12 O.S.Supp. 1978, § 2410, provides that evidence of a plea of guilty or offer to plead guilty, or of statements made

---

7. Direct examination of Melton by District Attorney Andrew M. Coats:

"Q. All right, sir. Did you have any further personal dealings with Mr. Shriver after that time?

"A. Well, there were several times he came down to the office and talked to Don and— but shortly after that, I say shortly after, I believe sometime in May—he gave me a loan of $1,500.00.

"Q. All right. So, you went back to him sometime in May and borrowed some more money from him, is that right?

"A. That's correct.

"Q. How did that come about?

"MR. JONES: Excuse me, just a moment. May we approach the bench?"

8. Testimony as to the $1,500.00 loan concluded with the following exchange between Melton and the District Attorney:

"THE COURT: All right. You may proceed. MR. COATS: Thank you, your Honor.

"Q. (Mr. Coats continuing) Mr. Melton, you had testified about some money you borrowed in 1977, in May or something of that year. Did you pay that money back to Mr. Shriver?

"A. Yes, sir, I did.

"Q. All right. Did you ever pay back the $800.00 that was given you in February of '77?

"A. No, sir, I never did.

"Q. Were you ever asked for it?

"A. No, sir."

in connection therewith, are not admissible in a criminal action against the person who made the plea or offer. But Section 2410 became effective October 1, 1978, subsequent to the trial below. However, we are persuaded that at the time of trial, even absent this statute, any communication relating to the plea bargaining process was privileged and inadmissible in evidence unless the defendant subsequently entered a plea of guilty which had not been withdrawn. We find this to be the majority view. *Moulder v. State*, 154 Ind.App. 248, 289 N.E.2d 522, 59 A.L.R.3d 432 (1972); Annot. Admissibility of Defense Communications Made in Connection With Plea Bargaining, 59 A.L.R.3d 441; A.B.A. Standards for Criminal Justice, Standards Relating to Pleas of Guilty, 3.1. See also *State ex rel. Young v. Warren*, Okl.Cr., 536 P.2d 965 (1975), which held that incriminating statements made in connection with invalid plea bargaining were inadmissible against the person making them.

But we do not view the testimony elicited from Melton, the State's witness, as coming within this rule. As we view the testimony, the State was attempting to establish whether the defendant had any personal dealings with the witness subsequent to the meeting of February, 1977. We are of the opinion and so hold that the State is not foreclosed from proving material, relevant facts from independent evidence and sources, even though those facts were discussed during plea negotiations. We find the testimony in question was admissible even if there was a plea agreement as outlined by defense counsel. It is therefore unnecessary to reach the issue of whether the court erred in refusing the defendant an evidentiary hearing to prove the agreement, and we find the defendant's second assignment of error to be without merit.

After the defendant took the stand to testify in his own behalf, the District Attorney on cross-examination asked him if he had loaned Melton any more money following the $800.00 payment. Over defense objection, the District Attorney was permitted to continue this line of inquiry.[9] We find the ruling of the trial court to be correct, since a defendant who elects to take the stand in his own behalf does so subject to the right of cross-examination by the prosecutor. *Zackery v. State*, Okl.Cr., 572 P.2d 580 (1977).

The third assignment of error concerns the court's refusal to grant a suspended sentence in view of all the circumstances. In essence, the defendant complains the judge based his decision on the nature of the crime for which the defendant was convicted and did not consider the defendant's application for a suspended sentence on its merits. The defendant cites *Jones v. State*, Okl.Cr., 557 P.2d 447 (1976), where the nature of the crime charged was the sole ground for denial of an application for a suspended sentence; *Boles v. State*, Okl.Cr., 497 P.2d 449 (1972), where the nature of the crime charged was the sole ground for denial of an application for a suspended sentence; and *Gillespie v. State*, Okl.Cr., 355 P.2d 451 (1960), where an application for a suspended sentence was refused solely because the defendant had demanded a jury trial.

---

**9.** Cross-examination of the defendant by the District Attorney:

"Q. Now, you loan him some money then later in the year, in '77?

"A. That's what he testified to yesterday.

"Q. I'm asking you. Did you give him some more money later than May or June of that year?

"MR. JONES: If the Court please, to which we object for the same reasons stated yesterday.

"THE COURT: Objection overruled.

"A. (By the Witness) Yes, I did.

"Q. All right, sir. And, in what month?

"A. I believe it was in May or June.

"Q. All right, sir. Did you give him any more money during the rest of the year?

"A. No, sir. I didn't give it to him, I loaned it to him.

"Q. This was another loan?

"A. Yes.

"Q. Has that been paid back?

"A. No, sir.

"Q. If Mr. Melton's testimony was that he did pay it back, is he in error about that?

"A. Mr. Melton has not paid the $1,500.00 back."

The transcript of the proceedings at which the defendant was sentenced discloses that the court, in denying the application for a suspended sentence and imposing its judgment and sentence, considered (1) the pretrial sentence report which recommended probation under community supervision; (2) the approximately 25 letters written to the court on behalf of the defendant; (3) the sentence in another case involving the bribery of a public official in the Oklahoma County Assessor's Office in which the defendant received a suspended sentence upon a plea of guilty; (4) the nature of the crime charged; (5) the sentence recommended by the jury; (6) the relative leniency of the sentence since the maximum is five years' imprisonment, and (7) the deterrent effect of imposing the recommended sentence.

 It has often been recognized by this Court that suspension or deferral of a sentence is a matter of grace, to be granted or denied by the trial court in the exercise of its sound discretion. *Cavaness v. State*, Okl.Cr., 581 P.2d 475 (1978). Moreover, this Court will not interfere with the trial court's discretion unless there is a clear abuse of such discretion. *Hamilton v. State*, Okl.Cr., 481 P.2d 471 (1971). We find that the cases relied upon by the defendant are clearly distinguishable from the instant case and that the trial court in this case did not abuse its discretion in rejecting the defendant's application for a suspended sentence, and in adopting the jury's recommended sentence as the judgment and sentence of the court. Accordingly, we find that the defendant's third assignment of error is without merit.

 The defendant's fourth assignment of error is the ruling of the examining magistrate binding the defendant over for trial, as the State failed to prove there was probable cause to believe the defendant committed the crime of bribery of a public official. The State is not required at preliminary hearing to present evidence which would be sufficient to convict at trial, and

there is a presumption that the State will strengthen its evidence at trial. *Turner v. State*, Okl.Cr., 549 P.2d 1346 (1976). When there is competent evidence in the record from which the magistrate, as a trier of fact, could reasonably conclude that there was probable cause to believe a crime was committed and that defendant committed it, the reviewing court will not interfere with the determination of the finder of fact. *Tabor v. State*, Okl.Cr., 582 P.2d 1323 (1978); *Jones v. State*, Okl.Cr., 557 P.2d 447 (1976). After carefully reviewing the preliminary transcript in the instant case, it is our opinion that the evidence presented by the State was sufficient to bind the defendant over for trial. We, therefore, find the defendant's fourth assignment of error to be without merit.

The fifth assignment of error is the denial of defendant's motion for judgment notwithstanding the verdict, as the State failed to prove all elements essential to establish the offense charged. Specifically, the defendant argues that proof of a gift given or offered for past efforts does not constitute corrupt giving or bribery. There must be, according to the defendant, a showing that the gift influenced official acts in a prospective, rather than a retrospective, fashion. In addition, he contends that there was no matter in which the defendant was involved which was pending in the Assessor's Office at the time the defendant gave $800.00 to Melton.

 The elements of Bribery of a Public Official are: (1) the corrupt giving (2) of any gift or gratuity (3) to a public official (4) with the intent to influence his official act (5) on any matter which may be pending or which may come before the official.

The court instructed the jury that the term "corruptly" imports a wrongful design to acquire some pecuniary or other advantage to the person guilty of the act or omission referred to.[10] The court instructed the jury that the term "bribe" signifies any money, goods, right in action, property, thing of value or advantage, present or

---

**10.** Court's Instruction No. 5; 21 O.S.1971, § 94.

prospective, or any promise or undertaking asked, given or accepted, with a corrupt intent to influence unlawfully the person to whom it was given, in his action, vote or opinion, in any public or official capacity.[11] The jury was instructed that the loan of money to a public official, if made corruptly and with the intent to influence his act, vote, decision, opinion or judgment is sufficient to constitute a bribe. This is in accordance with *Handley v. State*, 69 Okl.Cr. 321, 102 P.2d 947 (1940), wherein we held that anything may serve as a "bribe" so long as it is of sufficient value in the eyes of the person bribed to influence his official conduct.

We find that a gift or gratuity corruptly given to a public official may be a bribe whether given before or after the fact. And we find there was competent evidence from which the jury could conclude that the $800.00 constituted bribery of a public official.[12] Therefore, we find the defendant's fifth assignment of error to be without merit.

It is therefore our opinion that the defendant received a fair and impartial trial before a jury, that no substantial right of the defendant was prejudiced, and that the judgment and sentence appealed from should be, and the same is, hereby, *AFFIRMED*.

CORNISH, P. J., concurs.

BRETT, J., dissents.

---

11. Court's Instruction No. 6; 21 O.S.1971, § 97.

12. Cross-examination of Melton by the defendant's attorney, Stephen Jones:

"Q. After Mr. Shriver, according to your testimony, gave you this $800.00 in February of 1977, did you do anything for him in your official capacity?

"Q. Yes, sir.

"A. I was still trying to work to get those refunds, and at that time I suggested to Mr. Shriver to visit Mr. Wilson."