**Michelle Ann BINSZ, and Steven William Binsz, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–79–692, F–79–693.**

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1984.

Kayla A. Bower, Larry D. Muse, Bower & Muse, Norman, for Michelle Ann Binsz.

Danny K. Shadid, Homsey, Reed, Giles & Shadid, Oklahoma City, for Steven William Binsz.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

In the District Court of Oklahoma County, Case No. CRF–79–1180, appellants Mic-

helle Ann Binsz and Steven William Binsz were jointly tried for, and each found to be guilty of, the crime of Murder in the First Degree in violation of 21 O.S.Supp.1976, § 701.7. Having determined that the aggravating circumstance of Murder for Remuneration was present, the jury set each appellant's punishment at death. From the judgments and sentences entered by the trial court in accordance with the jury's verdict, timely appeals have been filed and, by order of this Court, consolidated for purposes of this opinion.

At the murder trial of appellants, Carla Jo Rapp, the principal State's witness who was also charged for the same murder, testified in response to a question by trial counsel for Michelle Binsz that the only promise of consideration that she had received for her testimony was "[t]hat they would just be fair with me and that I wouldn't go to the same penitentiary as Michelle Binsz." In fact, the plea bargain entered into on Carla's behalf provided that in exchange for her testifying against the Binszes and pleading guilty to Conspiracy to Commit Murder, the first degree murder charge would be dismissed and the prosecution would recommend that Carla be sentenced to serve two years. At the request of the prosecutor, Carla's attorney did not inform Carla of the specifics of the bargain,[1] but did tell her that the State would be fair and she should trust him.

By keeping Carla ignorant of the terms of the plea bargain, the prosecutor contrived a means of insuring that the true nature of the agreement would not come before the jury, and by remaining silent while Carla testified, he allowed the jury to be misled as to Carla's reasons for testifying. The question presented is whether on these facts the appellant was denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

The State argues that the agreement between Carla Rapp and the District Attorney's office was before the jury as Kay Linton, one of Carla's cellmates, testified at trial that Carla had laughed about the State's seeking the death penalty for her because, Carla had said, she would not do any time, and that if she did have to make a plea, it would be for conspiracy to murder and she would get a two-year suspended sentence. We believe, however, that the testimony of a thrice-convicted felon jailed for yet another crime did not effectively impeach Carla's credibility.

Carla denied having told her cellmates that she was going to receive a two-year suspended sentence in return for her testimony, steadfastly adhering to her story that the State had promised nothing more than to be fair and not to send her to the same penitentiary as Michelle Binsz.[2] The prosecutor entered the State as a willing accomplice to the misrepresentation told by Carla Rapp by adopting her story in closing argument:

> [Carla Jo Rapp] wants to turn State's evidence, why wouldn't she ... why wouldn't she tell the truth? She did. She told the truth. She's not pinning it on the Binszes. There's no reason for her to do that. ·
>
> \* \* \* \* \* \*
>
> There's no plausible reason for her not to come up here and tell the truth to you folks.

The State thusly joined the falsehood and used it to achieve murder convictions against the Binszes.

1. The testimony of one of Carla's former cellmates that Carla had bragged about her deal and her ability to describe the very terms of the bargain which Carla's attorney confirms in an affidavit indicate, however, that Carla did learn the terms of the agreement several months before the Binsz trial.

2. If Carla had not known, as unlikely as that now appears, the precise terms of the plea bargain, she nevertheless testified falsely for she did know that her attorney had negotiated a deal for her. Had Carla told the jury that she did not know the details, but that her attorney did and he advised her to trust him, defense counsel would have known to call her attorney in order to discover the true nature of the agreement.

We look at Kay Linton's testimony and find it to be credible, but we know that Carla's alleged boast became a reality on January 14, 1980, after her testimony in this case, when she entered a guilty plea to Conspiracy to Commit Murder and received only a nine month and fifteen day sentence. We also have before us an affidavit filed by Carla's attorney which verifies that the agreement was made prior to the Binsz trial.

The jury did not have the benefit of this knowledge. They had only the word of a three-time loser to tell them that the altruistic motivation Carla and the State were averring was not an accurate representation. Obviously the jury believed Carla's story, since it convicted both appellants and sentenced them to death.

In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), an accomplice falsely testified that he had received no promise in return for his testimony against the defendant. The Supreme Court held that failure of the prosecutor to correct the testimony of the witness which he knew to be false denied the defendant due process of law in violation of the Fourteenth Amendment. The fact that the jury was apprised that a public defender had promised to "do what he could" for the witness was deemed insufficient to turn what was otherwise a tainted trial into a fair one.

In reaching this conclusion, the Court marked a portion of a New York Court of Appeals decision:

> It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney had the responsibility and duty to correct what he knows to be false and elicit the truth

.... That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair. *People v. Savvides*, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 887, 136 N.E.2d 853, 854–855.

*Napue*, 360 U.S. at 269–270, 79 S.Ct. at 1177, 3 L.Ed.2d at 1221.

This Court discussed *Napue* and other Supreme Court cases in *Runnels v. State*, 562 P.2d 932 (Okl.Cr.1977), and suggested that a three-part test could be applied to determine whether there had been a denial of due process: First, whether a key portion of the State's case was presented with information affecting its credibility intentionally concealed; second, whether the prosecution knew or had reason to know of the concealment and failed to bring it to the attention of the trial court; and, third, whether the trier of fact was prevented from properly trying the case against the defendant as a result of the concealment.

Each prong of the *Runnels* tripartite test is met in the case at bar. Without Carla Rapp's testimony, the State lacked direct evidence that Michelle and Steven Binsz were involved in Mr. Busch's death; thus, Carla's credibility as a witness was an important issue in the case. Not only did the prosecutor fail to bring the agreement for leniency to the attention of the trial court, he bolstered the misrepresentation during closing argument when he told the jury that Carla had no reason to lie. The promise of a recommendation of two years' imprisonment for conspiracy rather than the death penalty for first degree murder provided Carla a strong temptation to swear falsely.[3] The prosecutor knew this and concealed it. Finally, "[t]he jury's estimate of truthfulness and reliability of a given witness may well be determinative of

---

**3.** Even if Carla did not know the specifics, as the 4th Circuit Court of Appeals observed in a case very similar to this one, *Campbell v. Reed*, 594 F.2d 4 (4th Cir.1979), the fact that the witness was not aware of the exact terms of the plea agreement only increases the significance, for purposes of assessing credibility, of his ex-

pectation of favorable treatment. A tentative promise of leniency might be interpreted by a witness as contingent upon the nature of his testimony. Thus, there would be a greater incentive for the witness to try to make his testimony pleasing to the prosecutor.

guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend ...." 360 U.S. at 269, 79 S.Ct. at 1177, 3 L.Ed.2d at 1221.

Had the jury been apprised of the true facts, it might well have concluded that Carla Rapp had fabricated testimony in order to curry favor with the district attorney's office. As we stated in *Mays v. State*, 594 P.2d 777 (Okl.Cr.1979), public policy demands full disclosure to the jury of the terms of any plea bargain between the prosecutor and an accomplice who testifies for the State. We think that on the basis of the foregoing cases we have no choice but to remand this case for a new trial.

We now address other errors we find to be prejudicial so that recurrence upon retrial may be avoided. The trial court's second-stage instructions combined with the verdict forms amounted to a directed verdict for death in the event that the jurors found the existence of any aggravating circumstances. We condemned the use of almost identical instruction and verdict forms in *Franks v. State*, 636 P.2d 361 (Okl.Cr.1981).

The photograph of the victim while living, dressed in his Department of Corrections uniform, should not have been, and should not be upon retrial, admitted. As in *Franks v. State*, 636 P.2d 361 (Okl.Cr. 1981), identification of the deceased was not in issue; thus, admission of the photograph was an abuse of discretion in that it provided no proof and was prejudicial. The error was compounded by the prosecutor's attempt during voir dire to portray the victim as a law officer, when in fact the victim had worked in the maintenance section of the Department of Corrections.

Now, there's going to be police officers testify in this case. Mr. Busch himself was a Department of Corrections officer. Have you had any dealings with policemen or deputies or anything that would cause you to be anything but fair and impartial or even lend more credibility to their testimony?

Finally, we note that appellants' contention that their individual attorneys had a conflict of interests as they were, at least, quasi-partners in practice, has merit. Ascertaining which attorney was representing whom is difficult even from a careful reading of the trial transcript.

For the reasons herein stated, the judgments and sentences appealed from should be, and the same are hereby, REVERSED and REMANDED for a new trial.

This opinion is published, not for any precedential value it might have, but merely to record the disposition of the two death cases.

BUSSEY, P.J., and CORNISH, J., concur in result.