Mario DIAZ, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–731.

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1986.

Rehearing Denied Dec. 19, 1986.

504

506

Mark Barrett, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Mario Diaz, the appellant, was convicted of First Degree Murder in the commission

of Robbery With A Dangerous Weapon pursuant to the felony-murder doctrine codified at 21 O.S.1981, § 701.7(B). Appellant was tried by jury in Cleveland County District Court, Case No. CRF–82–938, before the Honorable Alan Couch. The jury returned a sentence of life imprisonment.

On February 1, 1982, appellant boarded a plane in Tucson, Arizona, and flew to Oklahoma City to meet with Dr. Harold Wurst. Appellant was having financial problems and Dr. Wurst, a former co-worker, apparently agreed to loan the appellant $2,500.00. Appellant, accompanied by Vaughn Matthews, arrived at Wurst's home in Moore, Oklahoma, about dusk on February 2, 1982. The State introduced direct and circumstantial evidence that appellant pulled a butcher knife out of his coat sometime while he was in Wurst's home, that Wurst was tied up before appellant beat him with a pistol, that Wurst wrote one check for $1,000.00 and began writing a second check, that Wurst's home was searched, and that the appellant took Wurst's .22 Colt Woodsman pistol and two checks. Other items missing from Wurst's home included several rifles and a Visa credit card. Wurst's empty wallet and its miscellaneous contents were found scattered on the living room floor. The victim's checkbook was found in a pool of blood in the entryway. Dr. Wurst died as a result of receiving approximately twenty blows to the head with a blunt instrument.

Appellant testified that he became "irritated" when Wurst decided to loan him only $1,000.00, and that a heated argument ensued. According to Diaz and Matthews, Wurst became edgy and pulled a .22 Colt Woodsman pistol out from a coffee table and pointed it at Matthews. Appellant claimed that he wrestled the gun out of Wurst's hand, and then began beating Wurst with the pistol to prevent Wurst from regaining possession. Matthews admitted helping the appellant carry Wurst's body into the bathroom where it was discovered in the bathtub, and claimed that he took several rifles later at the appellant's request. Both appellant and Matthews denied taking the Visa card.

■ In his first assignment of error, appellant contends that the evidence was insufficient to establish that Wurst was killed while the appellant was in the commission of robbery with a dangerous weapon. See 21 O.S.1981, § 701.7(B). Due process requires a reviewing court to examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. Spuehler v. State, 709 P.2d 202, 203–04 (Okl.Cr.1985).

■ Initially, appellant asserts that the homicide did not occur in the commission of a robbery because Wurst's property was taken as an "afterthought" following the struggle and fatal beating, and thus no intent to steal arose until after the homicide. At common law, an intent to steal at the time of the taking was necessary to constitute robbery. R. Perkins, *Criminal Law* 343 (3d ed. 1982). The applicable Oklahoma statutes, however, changed the common law so that the taking need only be "wrongful" or against the will of the victim. *Id.* at 343 n. 2. See 21 O.S.1981, § 791; OUJI–CR 486 and commission comment. *See also Smith v. State*, 695 P.2d 864, 867 (Okl.Cr.1985); *Traxler v. State*, 96 Okl.Cr. 231, 251 P.2d 815, 836 (1952). The requirement that the taking be "wrongful" was satisfied by appellant's testimony that he forcefully wrestled Wurst's handgun away from Wurst against his will. *See Smith v. State*, 695 P.2d 864, 867 (Okl.Cr. 1985).

■ Appellant further contends that it is impossible to rob a dead man. First, we note that appellant forcefully took the victim's own pistol away from him during a struggle in which the victim was active. Second, even assuming that Wurst was dead at the time his other property was taken, the fact that a person robbed by force or fear is knocked unconscious by an instrument in the hands of the defendant, and the victim is unconscious while his property is taken, does not reduce the crime to larceny from the person. *See*

*Mitchell v. State*, 408 P.2d 566, 568 (Okl. Cr.1965). Moreover, it is not necessary that a robbery victim see or hear the taking of his property. *Lancaster v. State*, 554 P.2d 32, 34 (Okl.Cr.1976).

■ Furthermore, we find that the precise sequence of events is unimportant. The killing may precede, coincide with or follow the robbery and still be done in the commission of robbery with a dangerous weapon under 21 O.S.1981, § 701.7(B). *See Cloman v. State*, 574 P.2d 410, 420–21 (Wyo.1978); *Grigsby v. State*, 260 Ark. 499, 542 S.W.2d 275, 280–81 (1976); *State v. Nelson*, 65 N.M. 403, 338 P.2d 301, 306–07, *cert. denied*, 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed.2d 115 (1959).

■ Appellant's admission that he forcefully took a pistol away from Wurst rebuts his contention on appeal that no force was used to accomplish a taking of Wurst's property. Appellant further testified that he beat Wurst with the pistol in order to prevent Wurst from regaining possession. "[I]f one snatches property from the hand of another and uses force or intimidation to prevent an immediate retaking by the other, this is all one transaction and constitutes robbery." R. Perkins, *Criminal Law* 349 (3d ed.1982) (footnote omitted). *See Mangerich v. State*, 93 Nev. 683, 572 P.2d 542, 543 (1977). The appellant thus used force to complete the wrongful taking of Wurst's property. *See Smith v. State*, 695 P.2d 864, 868 (Okl.Cr.1985).

■ Finally, appellant claims that the evidence was insufficient to establish a causal connection between the taking of Wurst's property and his death. Appellant correctly asserts that at the time of the homicide, the accused must be engaged in some act which is required to complete the underlying felony. *See Franks v. State*, 636 P.2d 361, 365 (Okl.Cr.1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982). The record contains competent evidence from which a reasonable jury could infer beyond a reasonable doubt that the appellant used force or fear against Wurst in order to obtain and retain

possession of Wurst's property. In addition to appellant's admission to beating Wurst with a firearm to retain possession of such firearm, there was also sufficient circumstantial evidence from which the jury could infer that the appellant used a butcher knife to intimidate Wurst into parting with his property. The jury could reasonably infer that the appellant inflicted fatal injuries upon Wurst in order to overcome his resistance to the taking of his pistol and other property. Therefore, consistent with *Franks*, the force or fear used by the appellant was necessary to complete the underlying felony of robbery with a dangerous weapon. We find that there was a nexus between the death of Wurst and the underlying felony. *See Wade v. State*, 581 P.2d 914, 916 (Okl.Cr.1978).

■ Moreover, the record demonstrates that the homicide and robbery were committed during one continuous transaction, that such acts were so closely connected as to be inseparable in terms of time, place, and causal relation, and the actions tended to be explanatory of each other. Thus, the homicide was committed during the *res gestae* of the robbery and during its commission under 21 O.S.1981 § 701.7(B). *See Clark v. State*, 558 P.2d 674, 678 (Okl.Cr. 1977). *See also Grigsby v. State*, 260 Ark. 499, 542 S.W.2d 275, 280–81 (1976); *People v. Jentry*, 69 Cal.App.3d 615, 138 Cal.Rptr. 250, 258 (1977); *State v. Connor*, 241 N.W.2d 447, 460–64 (Iowa 1976).

■ In his second assignment of error, appellant argues that the robbery was not accomplished through the use of a dangerous weapon. We disagree. Robbery with a dangerous weapon is accomplished by using "any firearms or any other dangerous weapon" to complete a robbery. 21 O.S.1981, § 801. Almost any ordinary object, used in a manner which may cause death or great bodily harm, may be considered a dangerous weapon. *Pitts v. State*, 649 P.2d 788, 791 (Okl.Cr.1982). Appellant himself admitted beating the victim on the head with a firearm in order to prevent an immediate retaking of the weapon by the victim. The firearm was undeni-

ably used in such a manner as to cause death or great bodily harm within the meaning of *Pitts*. Wurst in fact died as a result of being beaten unmercifully with his own handgun by the appellant.

Matthews testified that the appellant tied up Wurst *before* beating him with the handgun, and that at some point the appellant pulled a butcher knife out of his coat pocket. The State presented evidence that the home of Wurst had been thoroughly searched. On this record, we find that a reasonable jury could conclude that the appellant either used a firearm to beat the victim or a knife to intimidate him in order to obtain or retain the victim's property. *See* 21 O.S.1981, §§ 791, 792, 801. Although appellant claimed that his use of the handgun was not intended to enable him to take Wurst's property, the credibility of witnesses and the weight to be given their testimony was properly left to the jury. *See Rounds v. State*, 679 P.2d 283, 287 (Okl.Cr.1984); *Renfro v. State*, 607 P.2d 703, 706 (Okl.Cr.1980). Thus, a reasonable jury could conclude from the record that the appellant forcefully used a firearm to complete the actual taking of Wurst's property. *See Smith v. State*, 695 P.2d 864, 868 (Okl.Cr.1985).

Accordingly, we hold that the State presented sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Wurst was killed while the appellant was in the commission of robbery with a dangerous weapon.

■■■ In his third assignment of error, appellant contends that evidence presented at the preliminary hearing, excluding his inadmissible inculpatory statements, was insufficient to bind him over for trial on first degree felony-murder. We disagree. The State is not required at preliminary hearing to produce more evidence than that required to show an offense was committed and that there are reasonable grounds to believe the defendant committed the offense. *Self v. State*, 657 P.2d 1202, 1204 (Okl.Cr.1983). Moreover, there is a presumption that the State will strengthen its evidence at trial. *Shri-*

*ver v. State*, 632 P.2d 420, 427 (Okl.Cr. 1980). Even excluding appellant's inculpatory statements, our examination of the preliminary hearing transcript reveals that the evidence presented by the State was sufficient to bind the appellant over for trial. *Id.* Therefore, this assignment of error is without merit.

■■■ Appellant complains in his fourth assignment of error that the trial court erred in overruling his demurrer to the information. Specifically, appellant argues that the information failed to allege facts showing that the instrument of death was a dangerous weapon. However, the information stated that the dangerous weapon was in fact the butt-end of a handgun. We find that the information was sufficient to enable a person of common understanding to know what acts constituted the offense, and appellant has failed to show that he was in fact misled by it or that it would expose him to double jeopardy. *Jefferson v. State*, 675 P.2d 443, 445 (Okl.Cr.1984).

Moreover, appellant's reliance on *Morris v. State*, 603 P.2d 1157 (Okl.Cr.1979), is misplaced. *Morris* held that an information alleging that a homicide occurred during the course of a robbery by force, and which failed to allege facts which would constitute a homicide in the commission of an armed robbery, could not support a conviction for felony-murder under the 1975 version of 21 O.S.Supp.1975, § 701.1(2). However, in the present case, the State specifically alleged that the homicide occurred in the commission of robbery with a dangerous weapon, which is a proper underlying felony under our current statute codified at 21 O.S.1981, § 701.7(B). Accordingly, this assignment of error is without merit.

■■■ Appellant asserts failure to instruct on self-defense as his fifth assignment of error. Appellant has failed to properly preserve this issue, however, as the record fails to indicate that defense counsel properly submitted a written request for an instruction on self-defense. *Millwood v. State*, 721 P.2d 1322, 1326

(Okl.Cr.1986). Moreover, we cannot say that such failure deprived appellant of a substantial right upon this record. *Id.* Furthermore, we are of the opinion that the appellant failed to present any evidence that he reasonably believed the force he employed was necessary to protect himself from imminent danger of bodily harm. *See Coulter v. State,* 721 P.2d 818, 820 (Okl.Cr. 1986). Thus, this assignment of error is without merit.

■ In his sixth assignment of error, appellant contends that he was denied a fair trial because of six allegedly improper comments made by the prosecutor during trial. We shall address only one of the remarks, however, because the record reveals that five of the comments were either not objected to or that any error was cured by the jury being properly admonished by the trial judge. *See Rogers v. State,* 721 P.2d 820, 825–26 (Okl.Cr.1986); *Williams v. State,* 702 P.2d 382, 383–84 (Okl.Cr. 1985); *Myers v. State,* 623 P.2d 1035, 1036 (Okl.Cr.1981). Appellant complains that the prosecutor improperly attempted to define reasonable doubt to the prospective jurors during voir dire examination. The precise language used by the prosecutor was as follows:

> You have heard all this talk about beyond a reasonable doubt and you heard the Court ... saying that that is not the same thing as beyond a shadow of a doubt.

(Tr. 171). The appellant's objection to the above statement was overruled by the trial court because "I haven't heard a definition yet and I don't think I will." Initially, we agree with the trial judge's assessment that the prosecutor did not "define" the phrase, nor did the remark create an erroneous impression. *See Johnson v. State,* 632 P.2d 1231, 1233 (Okl.Cr.1981).

■ Furthermore, this Court has recognized that it is not grossly incorrect for the prosecutor to state that "beyond a reasonable doubt" does not mean "beyond a shadow of a doubt." *Williams v. State,* 572 P.2d 257, 259 (Okl.Cr.1977). While we continue to condemn attempts by prosecutors to define reasonable doubt, we find that the appellant suffered no prejudice from the prosecutor's statement in the present case. *See Vaughn v. State,* 697 P.2d 963, 967 (Okl.Cr.1985); *Williams v. State,* 572 P.2d 257, 259 (Okl.Cr.1977). *See also Fiorot v. State,* 641 P.2d 551, 555 (Okl.Cr.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1308 (1982).

■ We must also reject appellant's contention that prosecutorial misconduct occurred when the prosecutor "misled" the defense with regard to a plea bargain obtained by Vaughn Matthews. Although the better practice would be to consummate a plea agreement prior to trial in a case involving codefendants, in view of the fact that the true nature of the plea bargain was in fact revealed to the jury, we cannot say that the appellant was denied due process of law in violation of the Fourteenth Amendment to the United States Constitution. *But see Binsz v. State,* 675 P.2d 448, 449–51 (Okl.Cr.1984). Public policy requirements were satisified here by full disclosure to the jury that accomplice Matthews had received a plea agreement on Manslaughter and a ten year sentence with the last five years suspended. This assignment of error is without merit. Moreover, the record clearly indicates that the plea agreement was not consummated until the evening immediately prior to the day it was revealed to the jury.

Appellant asserts in his seventh assignment of error that comments made by the trial judge deprived him of a fair and impartial trial. The allegedly improper comments were as follows:

> THE COURT: We hear an awful lot in this day and age about rights of defendants. The State of Oklahoma has rights also. The District Attorney's office representing the people of the State of Oklahoma have rights. Is anyone unable for any reason to give the State of Oklahoma a fair and impartial trial? (Tr. 8–9).
>
> * * * * * *
>
> THE COURT: I would like to at this point say one thing about circumstantial

evidence.... [I]n most crimes ... there is no direct evidence. Generally crimes are not committed on the 50–yard line Saturday afternoon when OU plays Nebraska. They generally aren't committed out in the wide open public. Crimes are generally supported by circumstantial evidence and so, that is the difference between circumstantial and direct. Direct you see the crime.... Circumstantial is anything else. (Tr. 104).

\* \* \* \* \* \*

THE COURT: Now, I mentioned the words burden of proof. In a criminal case burden of proof is beyond a reasonable doubt. Makes interesting television, perhaps. Generally you hear about beyond a shadow of a doubt. Well, no such animal in the law. It is beyond a reasonable doubt. (Tr. 13).

\* \* \* \* \* \*

THE COURT: If your answers would be different to questions you have heard, how would they be different?

MRS. CLINTON: I can think of one thing. About seven or eight years ago my 90 year old grandfather was beaten and robbed and left for the dead.... I wanted to call it to your attention.

THE COURT: This may be a similar fact situation. You see, I have not heard the facts in this case either. I don't know much more about it than you all do. But the facts are somewhat similar. Is there anything now that you do recall about that situation with your grandfather that would spill over into this case and cause you any difficulty in separating the two? (Tr. 105).

■■■■ The duty of a trial judge is to sit fairly and impartially on the rights between the State on the one side and the defendant on the other; he should refrain from comments which indicate his views as to the credibility of witnesses or the merits of the case. *See Holcomb v. State*, 95 Okl.Cr. 55, 239 P.2d 806, 807 (1952). We find that the above comments did not violate the *Holcomb* standard. *Id.* When taken in context of the voir dire record, the comment on the State's right to a fair trial was merely reciprocal to following remarks on the defendant's right to a fair trial. It must be conceded that both the State and the defendant are entitled to a fair and impartial jury. The first two comments were generally accurate statements of the law, and we cannot say that they improperly detracted from the rights of the appellant. Similarly, we hold that the trial judge did not improperly attempt to define reasonable doubt. *See Vaughn v. State*, 697 P.2d 963, 967 (Okl.Cr.1985); *Johnson v. State*, 632 P.2d 1231, 1233 (Okl.Cr.1981); *Williams v. State*, 572 P.2d 257, 259 (Okl.Cr.1977). The fourth comment, which involved a discussion between the trial judge and a prospective juror, was prompted by statements made by the prospective juror which indicated a possible bias. We find that the trial judge's remarks were properly made to insure that the prospective juror could be fair and impartial in spite of an apparent robbery perpetrated on her grandfather several years earlier. We fail to see how any of the foregoing comments by the trial judge indicated any prejudice against the appellant to the jury. *See Scott v. State*, 674 P.2d 54, 56 (Okl.Cr. 1984). This is particularly true in light of the strong evidence against the appellant. *See Grayson v. State*, 687 P.2d 747, 749 (Okl.Cr.1984). This assignment of error is without merit.

■■■■ Appellant next argues that the trial court committed reversible error in admitting photographs of the crime scene and the victim. Appellant contends that such photographs were irrelevant and unduly gruesome. The admissibility of demonstrative evidence such as photographs is a question of legal relevance for the trial court. Photographs are admissible when the probative value is not outweighed by the danger of unfair prejudice to the defendant. *See Jefferson v. State*, 675 P.2d 443, 447 (Okl.Cr.1984); *Assadollah v. State*, 632 P.2d 1215, 1217 (Okl.Cr.1981). The trial judge's decision to admit photographs will not be disturbed on appeal unless an abuse of discretion is shown.

*Glidewell v. State,* 626 P.2d 1351, 1354 (Okl.Cr.1981).

■ In the present case, the photographs in question depicted the crime scene, the position of the victim's body, and the location and number of wounds upon the victim's head. The photographs which showed blood on the floor and the walls in various rooms of the victim's house supported the testimony which indicated a struggle. The black and white photograph of the victim lying in the bathtub, showing that his hands had been tied behind his back, supported testimony that the victim had been beaten after being tied up and that the murder was committed during a robbery. Therefore, we cannot say that these photographs were more prejudicial than probative. *See Moore v. State,* 714 P.2d 599, 601 (Okl.Cr.1986); *Banks v. State,* 701 P.2d 418, 424–25 (Okl.Cr.1985).

Appellant claims in his ninth assignment of error that his conviction must be reversed because the trial court allowed Vaughn Matthews, who was charged with the same murder, to testify for the State in a capital case without being named as a witness prior to trial. Article II, section 20 of the Oklahoma Constitution provides in relevant part:

> In all criminal prosecutions the accused ... shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses.

■ The prosecutor has stipulated on appeal that defense counsel in fact objected to the State calling Matthews without his being properly endorsed as a witness, even though the record is silent as to such objection. The rule has been repeatedly announced by this Court, however, that a defendant "must do more than simply object; he must withdraw his announcement of ready for trial and request a continuance." *Mason v. State,* 560 P.2d 1048, 1050 (Okl.Cr.1977). *See Fisher v. State,*

668 P.2d 1152, 1155 (Okl.Cr.1983). As noted in *Riggle v. State,* 585 P.2d 1382, 1389 (Okl.Cr.1978):

> [T]his Court has specified a definite procedure to follow where the defense counsel is surprised by the late endorsement of a witness. That procedure was set out in *Paschall v. State,* 96 Okl.Cr. 198, 252 P.2d 175 (1952), in the second paragraph of the Syllabus as follows:
>
> The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. *Where he fails to do this the error, if any, is waived.* (Emphasis added).

*See also Blanton v. City of Oklahoma City,* 568 P.2d 288, 291 (Okl.Cr.1977); *Fitzpatrick v. State,* 544 P.2d 525, 530 (Okl.Cr. 1975); *Songer v. State,* 464 P.2d 763, 765–66 (Okl.Cr.1969). We hold that the error, if any, was waived when the appellant failed to withdraw his announcement of ready and seek a continuance. Moreover, on this record we fail to see how the appellant was surprised or unfairly prejudiced. *See Johnson v. State,* 487 P.2d 362, 363 (Okl. Cr.1971). This assignment of error is without merit.

■ In his tenth assignment of error, appellant contends that he was denied effective assistance of counsel. Cited on appeal as evidence of inadequate representation were trial counsel's lack of sufficient time to prepare, trial counsel's failure to excuse a conviction-prone juror, and his failure to investigate facts which might have shown the deceased to have been the aggressor.

We have examined these allegations as they pertain to the entire record and find that they do not establish that counsel's performance was deficient within the meaning of *Strickland v. Washington*, 466 U.S. 668, 686–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). Appellant has failed to demonstrate that defense counsel committed unprofessional errors which prejudiced his defense so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have be different." *Id.* at 694, 104 S.Ct. at 2068. *See Anderson v. State*, 719 P.2d 1282, 1284 (Okl.Cr.1986).

 Appellant claims in his eleventh assignment of error that the trial court erred in allowing Ray Blakeney, an investigator for the medical examiner's office, to give an expert opinion of the cause of Wurst's death. The decision as to the sufficiency of the qualifications of an expert witness is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *See Kennedy v. State*, 640 P.2d 971, 977 (Okl.Cr.1982); *Riggle v. State*, 585 P.2d 1382, 1387 (Okl.Cr.1978). Mr. Blakeney testified that in his two and one-half years as the chief investigator for the State medical examiner's office, he has examined hundreds of deceased persons including cases involving head injuries. Blakeney personally observed the multiple lacerations and contusions on Wurst's head and face, and was present at the autopsy. He served three years in the United States Navy as an operating room technician, attended seminars at a medical school receiving extensive training from licensed doctors, and assisted in the preparation of an article for a medical journal. On this record, we cannot say that the trial court abused its discretion. *See Riggle v. State*, 585 P.2d 1382, 1387–88 (Okl.Cr.1978); *Box v. State*, 541 P.2d 262, 265 (Okl.Cr.1975); *Harvell v. State*, 395 P.2d 331, 341 (Okl.Cr.1964).

 Once the witness was qualified as an expert, the weight and credibility of his opinion became a question for the jury. *See Kennedy v. State*, 640 P.2d 971, 978 (Okl.Cr.1982). Moreover, it is difficult to perceive how the appellant could have been unfairly prejudiced since defense counsel thoroughly cross-examined Blakeney concerning the fact that he was not a licensed medical doctor or pathologist. Such impeachment properly went to the credibility of the witness. *See Riggle v. State*, 585 P.2d 1382, 1382 (Okl.Cr.1978). It is not required that cause of death be given by a licensed medical doctor. *Id. See also Harvell v. State*, 395 P.2d 331, 340–41 (Okl.Cr. 1964). Finally, because of the nature, extent, and number of lacerations to the victim's head in the present case, we hold that expert testimony was unnecessary because the cause of death was apparent to an ordinary layman and no other determination would be reasonable on this record. *See State v. Fierro*, 124 Ariz. 182, 603 P.2d 74, 77 (1979). "It is only where the fact of death and its cause is beyond the understanding of the average layman that expert testimony may be necessary." *Id.* Therefore, we reject appellant's assertion that expert testimony was necessary to prove the cause of death beyond a reasonable doubt.

 We find that there was sufficient circumstantial evidence from which a rational jury could infer beyond a reasonable doubt that the appellant was the criminal agency which caused the death of Wurst. *See Jones v. State*, 523 P.2d 1126, 1132 (Okl.Cr.1974). *See also Rinehart v. State*, 641 P.2d 192, 193–94 (Wyo.1982); *State v. Decello*, 111 Ariz. 46, 523 P.2d 74, 78–79 (1974); *People v. Sommerhalder*, 9 Cal.3d 290, 107 Cal.Rptr. 289, 508 P.2d 289, 291 (1973). The fact that there might be some possibility that the victim's emphysema contributed to his death, a fact which the appellant has wholly failed to substantiate, does not relieve the inflictor of wrongful trauma of his responsibility so long as other causes are not the proximate cause of death. *See Eby v. State*, 702 P.2d 1047, 1049 (Okl.Cr.1985). After careful review of the record, it is clear that but for the injuries inflicted upon the victim by the appellant, the death would not have oc-

curred. *Id.* We will not allow those who commit offenses to escape punishment by the application of strained theory.

We find it unnecessary to address at length the appellant's claim that the admission of Blakeney's opinion as to the cause of death violated 12 O.S.1981, § 2701, because such issue was waived for failure to object on this specific ground at trial. *See* 12 O.S.1981, § 2104(A)(1).

■ In his twelfth assignment of error, appellant contends that he was denied a trial by a fair and impartial cross-section of the community due to the exclusion of potential jurors solely because they were opposed to capital punishment. Relying on *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D. Ark.1983), *mod.* 758 F.2d 226 (8th Cir. 1985), he argues that such juries are guilt-prone, that they exclude identifiable groups including women and blacks who traditionally have been opposed to the death penalty, and that questioning panel members at the beginning of the trial unduly focuses the minds of the jurors on the sentencing phase before any evidence as to guilt as been introduced. The United States Supreme Court recently rejected this position when it reversed the *Grigsby* decision in *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). This Court adopted the *Lockhart* decision in *VanWoundenberg v. State*, 720 P.2d 328, 331-32 (Okl.Cr.1986). Accordingly, this assignment of error is without merit.

■ In his last assignment of error, appellant claims that reversible error occurred when the trial court allowed the trial to proceed on two occasions in the absence of defense counsel. The only evidence that we found in the record supporting appellant's claim was during the hearing on the Motion for New Trial where defense counsel admitted coming back from a recess two or three minutes late. Even then, defense counsel testified that a witness for the State was merely identifying an exhibit.

Appellant cites *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), in support of his argument. *Geders* held that a trial court's order preventing the defendant from consulting with his counsel about anything during a 17-hour overnight recess between his direct and cross-examination violated his Sixth Amendment right to counsel. *Id.* at 91, 96 S.Ct. at 1337. *Geders* is not applicable here because appellant was not denied access to consult with defense counsel. Moreover, appellant has failed to demonstrate that he suffered prejudice. *See Frederick v. State*, 667 P.2d 988, 992 (Okl. Cr.1983). This assignment is meritless. Therefore, the judgment and sentence is AFFIRMED.