**Tuan Anh NGUYEN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–86–786.**

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1988.

As Corrected Dec. 13, 1988.

Rehearing Denied Feb. 9, 1989.

John Street, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Tuan Anh Nguyen was convicted by a jury in Tulsa County District Court for three counts of Murder in the First Degree. For Count I, the jury set punishment at life imprisonment. For Counts II and III, the jury found the existence of three aggravating circumstances in accordance with 21 O.S.1981, § 701.12 and recommended that the death penalty be imposed. The sentences were assessed accordingly by the trial court.

On the morning of May 24, 1982, Joseph and Myra White arrived at their home and found the dead bodies of Donna Nguyen, Mrs. White's first cousin, and Joseph and Amanda White, the White's two children. Each one had been stabbed to death. Subsequent police investigation led to the arrest of the appellant, Donna Nguyen's husband. Appellant was apprehended in Tucson, Arizona, and returned to Tulsa on June 30, 1986.

In appellant's first assignment of error, he complains that his right to equal protection was violated by the prosecutor's exclusion of three blacks from the jury panel by the use of peremptory challenges. Appellant relies on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which the Supreme Court stated that, "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is

intended to secure." *Batson*, 106 S.Ct. at 1717.

■ We find the appellant's reliance on *Batson* to be misplaced for two reasons. Initially, the Supreme Court stated that to establish a case of purposeful discrimination, a defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the *defendant's* race. (Emphasis added). *Batson*, 106 S.Ct. at 1703. The Supreme Court did not say that purposeful discrimination is to be presumed from the removal of veniremen of some racial group other than that of the defendant. Since the appellant was Vietnamese, not Black, we find *Batson* to be inapplicable.

■ Secondly, even if we were to assume that discrimination had been established, the Supreme Court stated that the burden then shifts to the State to come forward with a neutral explanation for the challenges. *Batson*, 106 S.Ct. at 1723. The record before us indicates that the prosecutor provided an explanation for challenging each of the black veniremen. The first was challenged because the prosecutor believed he demonstrated poor communication skills. The second was challenged because he had previously been falsely accused of a crime. Thus, the prosecutor felt he might harbor ill will toward the State. The third was challenged because the prosecutor believed she had been inattentive during the voir dire of the other jurors. The prosecutor stated that she appeared to have been sleeping before she was called to the panel. We find these reasons for challenge to be racially neutral. Therefore, we find this assignment of error to be without merit.

In the second assignment of error, appellant claims that the trial court erred by allowing evidence of other crimes to be presented during the first stage of trial. Through the testimony of Mrs. White, the State presented evidence of a prior altercation between the appellant and Donna Nguyen. At the time of this incident, the Nguyens were separated and Donna was staying with the Whites. According to Mrs. White, the appellant had come to her home, grabbed Donna around the neck and tried to drag her out of the house.

Specifically, appellant asserts that the notice filed by the State of intent to use other crime evidence was insufficient under the requirements of *Burks v. State*, 594 P.2d 771, 774–775 (Okl.Cr.1979). Appellant complains that the notice, filed eleven days before trial, lacked any detail of what happened other than the mere accusation of domestic abuse or assault and battery. Appellant further complains that the notice failed to specify when or where the incident occurred. Thus, appellant claims that he was unable to prepare an adequate defense for trial.

■ We agree with the appellant that the State's notice of intent to offer evidence of another crime was somewhat deficient. Such notices shall describe with the same particularity required of an indictment or information. *Burks*, 594 P.2d at 774. However, the purpose of the State's duty to give notice of its intention to introduce evidence of other crimes at trial is to insure against surprise on part of the defense, and to allow time for the defense to be heard prior to the information being placed before the jury. *Clanton v. State*, 711 P.2d 937, 938 (Okl.Cr.1985).

Under the circumstances of this case, this Court is convinced that the evidence did not surprise the appellant. During the preliminary hearing, defense counsel had cross-examined Mr. White about the incident. Moreover, during an in-camera discussion at trial, defense counsel acknowledged Mr. White's testimony of this incident at the preliminary hearing. Therefore, considering the extensive cross-examination by defense counsel of this altercation at trial, we find that appellant has failed to demonstrate any prejudice. This assignment is without merit.

In the next assignment of error, appellant claims that the trial court erred by admitting into evidence color photographs and slides of the victims' bodies. Appellant argues that since his defense was alibi, the

only issue was the identity of the perpetrator. Thus, appellant asserts that the sole purpose of the photographs was to appeal to the passion and prejudice of the jury.

This argument was expressly rejected in *Newbury v. State*, 695 P.2d 531, 534 (Okl. Cr.1985), wherein this Court stated that in every criminal prosecution, it devolves upon the State to prove, first, the corpus delicti, and, second, that the crime was committed by the accused. Pictures of the murder victim are always useful in establishing the corpus delicti of the crime. *Id.*

▮ For photographs to be admissible, their content must be relevant and their probative value must substantially outweigh their prejudicial effect. *Smith v. State*, 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert. denied* — U.S. ——, 108 S.Ct. 358, 98 L.Ed.2d 383 (1988). The fact that the pictures are gruesome does not of itself cause photographs to be inadmissible. *Id.* The probative value of photographs of murder victims can be manifested numerous ways including showing the nature, extent, and location of wounds, depicting the crime scene, and corroborating the medical examiner's testimony. *Robison v. State*, 677 P.2d 1080, 1087 (Okl.Cr.1984). We find that the probative value of the photographs and slides in the instant case is derived from each of the aforementioned examples. *See also Castro v. State*, 745 P.2d 394, 402 (Okl.Cr.1987), *cert. denied* — U.S. ——, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1987); and *Thompson v. State*, 711 P.2d 936, 937 (Okl. Cr.1985), *cert. denied* 479 U.S. 830, 107 S.Ct. 115, 93 L.Ed.2d 62 (1986). Despite some repetition, we find no abuse of discretion in their admission.

In the fourth assignment of error, appellant contends that the trial court erred by admitting into evidence a shirt the appellant had left at a nearby apartment on the night of the murders. Specifically, appellant claims that the scientific tests performed on the shirt had altered its appearance. The admissibility of demonstrative evidence is within the discretion of the trial court, whose discretion will not be disturbed absent an abuse of that discretion.

*Banks v. State*, 728 P.2d 497, 503 (Okl.Cr. 1986).

▮ The record reveals that the alterations to the shirt were adequately explained by the chemist who performed the tests. Moreover, the probative value of the shirt was the fact that it placed the appellant near the scene of the crime on the night of the murders. Therefore, we find no abuse of discretion.

In the next assignment of error, appellant contends that he was denied a fair trial because of six allegedly improper comments made by the prosecutor during trial. We shall address only five of the remarks, however, because the record reveals that one of the comments was not objected to at trial, and accordingly, any error therein has been waived. *See Trevino v. State*, 739 P.2d 1019, 1021 (Okl.Cr.1987); *Fitchen v. State*, 738 P.2d 177, 179 (Okl.Cr.1987).

▮ Appellant first complains that the prosecutor attempted to define reasonable doubt to the jury during the voir dire examination. In response to a prospective juror's statement that she could consider the death penalty if she was sure "beyond a shadow of a doubt" that the appellant was guilty, the prosecutor commented as follows:

But, do you understand, ma'am, that the burden of proof is beyond a reasonable doubt. It is not 'overwhelming' or 'shadow of a doubt.' It is beyond a reasonable doubt.

(Tr. 159, 181). In overruling appellant's objection to the above statement, the trial court stated. "I think counsel for the State has properly stated it is by evidence beyond a reasonable doubt." (Tr. 181–182). We agree. The prosecutor did not define reasonable doubt, nor did he create an erroneous impression. *See Stringfellow v. State*, 744 P.2d 1277, 1279 (Okl.Cr.1987).

Furthermore, this Court has recognized that it is not grossly incorrect for the prosecutor to state that "beyond a reasonable doubt" does not mean "beyond a shadow of a doubt." *Diaz v. State*, 728 P.2d 503, 511 (Okl.Cr.1986). While we continue to condemn attempts by prosecutors to define

reasonable doubt, we find that the appellant suffered no prejudice from the prosecutor's statement in the present case. *See Stringfellow, supra; Diaz, supra.*

Appellant next contends that the prosecutor attempted to elicit sympathy for the victims by referring to their "unimaginable terror." This argument is without merit. This court has consistently held that the right of argument contemplates a liberal freedom of speech and that the range of discussion, illustration and argumentation is wide. *Hartsfield v. State,* 722 P.2d 717, 720 (Okl.Cr.1986). Counsel for both the State and the defendant have a right to discuss freely from their standpoints the evidence and the inferences and deductions arising therefrom, and it is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the defendant's rights that a reversal can be based on improper argument. *Winterhalder v. State,* 728 P.2d 850 (Okl.Cr.1986). We have examined the record and find the comment to be a reasonable inference based upon the evidence.

Appellant next asserts that the prosecutor made an improper reference to his failure to testify at trial. Specifically, appellant complains about the prosecutor's statement that, "[i]f there is any other explanation for [appellant's] conduct, you have not heard it." To constitute reversible error, statements by the prosecutor must directly and unequivocally call attention to the failure of the accused to testify. The comments must be such that the jury would naturally and necessarily understand that the statements could only be rebutted by the defendant personally. *Renfro v. State,* 734 P.2d 286, 289 (Okl.Cr.1987).

Although the comment in this case came very close to a forbidden reference, we cannot say that it was reversible error. The comment appears to refer to the failure of the defense to refute the State's claim that the appellant left Oklahoma to avoid being apprehended. Rebuttal to this argument could have been made by witnesses other than the appellant.

Appellant also complains that the prosecutor erred during the second stage of the trial by arguing that life imprisonment was not a severe enough punishment for the crimes committed in this case. We find this argument to be meritless. The second stage of a trial is for the purpose of setting punishment, and in a trial for first degree murder, aggravating and mitigating circumstances are to be considered. A prosecutor has a right to discuss the evidence from his standpoint and all reasonable inferences and deductions arising therefrom. *Winterhalder v. State,* 728 P.2d 850 (Okl.Cr.1986). We find no error.

Finally, appellant complains about remarks allegedly intended to incite societal alarm. We have reviewed each instance cited by appellant, but find none to warrant a reversal. Moreover, we note that defense counsel's objection was sustained by the trial court and the jury was properly admonished to disregard the remark. Generally, the court's admonition to the jury to not consider the remarks of counsel cures an error unless it is of such a nature that after considering the evidence the error appears to have determined the verdict. *Horton v. State,* 728 P.2d 1376, 1377 (Okl.Cr.1986). Considering the overwhelming evidence of appellant's guilt, we cannot say that the remark was so prejudicial as to have aggravated the sentences. Therefore, any error was cured by the judge's admonition.

In the sixth assignment of error, appellant alleges that the evidence is insufficient to sustain his convictions of first degree murder. The test for the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985). In making this assessment, the reviewing court must accept all reasonable inferences and credibility choices that tend to support the trier of fact's verdict. *Washington v. State,* 729 P.2d 509, 510 (Okl.Cr.1986). Cir-

cumstantial evidence and reasonable inferences drawn therefrom, which have the same probative effect as direct testimony, need not exclude every conceivable hypothesis or negate any possibility other than guilt. *R.D.O. v. State*, 735 P.2d 1198, 1200 (Okl.Cr.1987).

In the present case, Mr. Tien Du Bach testified that the appellant had admitted to him that he had killed his wife. According to the medical examiner, the wounds on all the bodies were similar and could have been caused by the same weapon. The medical examiner also testified that the victims died in the same general time period. Rick Brown, who lived in the same neighborhood as the Whites, testified that the appellant came to his house on the evening of the murders. Mr. Brown also testified that the appellant went into the bathroom to wash his shirt and then left hurriedly, without taking his suitcase. Therefore, we find that the State presented sufficient evidence for the jury to find the appellant guilty of the crimes charged.

In the seventh assignment of error, appellant argues that the trial court erred during the second stage of trial by admitting into evidence three photographs of the victims as they were found in their bedroom. For many of the reasons stated in assignment three, we find this argument to be without merit.

During the second stage of trial, the State had the burden of proving each of the aggravating circumstances alleged beyond a reasonable doubt. 21 O.S.1981, § 701.11. The photographs of the children were relevant for that purpose. They had a tendency to make the existence of a fact of consequence more or less probative than it would be without the evidence. 12 O.S. 1981, § 2401. The fact that the State may have failed to prove an aggravating circumstance does not make the photographs any less relevant.

In the next assignment of error, appellant argues that the trial court erred during the second stage by refusing to allow any evidence concerning parole policy. Specifically, appellant claims that such evidence could have been considered as a mitigating circumstance. We disagree. A mitigating circumstance consists of "... any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1, 8 (1982). *See also California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). Clearly, the parole policies of the executive branch of this State fall outside this realm. Moreover, we continue to adhere to our settled position that it is improper for a trial court to instruct on the eligibility of a defendant for parole. *See Miller v. State*, 522 P.2d 642, 644 (Okl.Cr. 1974); *Kovash v. State*, 519 P.2d 517, 522 (Okl.Cr.1974), *cert. denied* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974).

In the ninth assignment of error, appellant alleges that he received inadequate notice of the evidence that the State intended to use in support of the Bill of Particulars. We disagree. The purpose of notice prior to trial is to allow the defendant time to present a defense or an explanation for alleged criminal misconduct. *Walker v. State*, 723 P.2d 273, 285 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed. 2d 600 (1986). Moreover, the legislature has provided that, "[o]nly such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." 21 O.S.1981, § 701.10.

On October 1, 1986, three weeks before trial, the State filed a notice of evidence in support of aggravating circumstances, which stated in pertinent part:

Evidence of the defendant's continuing violent acts after the 1982 homicides will be shown by a witness, Mychau Thi Truong, who will tell of her repeated physical abuse by the defendant and his physical mistreatment of their child. (O.R.40).

Furthermore, during an in-camera hearing at trial, defense counsel admitted being aware of the witness because the prosecution had provided the defense with FBI reports. (T.R. 816–817). These reports

consisted of some thirty pages of Tucson police reports, statements by Ms. Truong and other relevant correspondence. At trial, the State did in fact introduce the evidence it had specified. We find that the notice given in this case was sufficient to have permitted the appellant to prepare his defense. *See Banks v. State,* 701 P.2d 418, 426 (Okl.Cr.1985). This assignment is without merit.

In the final assignment of error, appellant urges that the statutory aggravating circumstance that the murder was especially heinous, atrocious or cruel was applied in an overbroad and unconstitutional manner. Appellant relies on *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987), in which this Court held that this circumstance applies only to those murders in which torture or serious physical abuse is present. Specifically, appellant asserts that no evidence of any torture or serious physical abuse to any of the victims was ever presented.

■ One of the three aggravating circumstances found by the jury to be present in appellant's case was that the murder was "especially heinous, atrocious, or cruel." After a thorough review of the record, we find that the evidence does not support this particular aggravating circumstance. The record reveals that both children died of multiple stab wounds. While many of the wounds were nonfatal, no evidence was presented to the trier of fact to indicate whether either child suffered prior to death.

In *Odum v. State,* 651 P.2d 703, 707 (Okl.Cr.1982), this Court held that in the absence of evidence of physical or mental suffering, the aggravating circumstance that it was heinous, atrocious, or cruel was not supportable. The same is true in the present case. We do note, however, that in evaluating the existence of this aggravating circumstance, the jury was not presented with any constitutionally infirm or otherwise improper evidence. *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). The State's argument of its existence rested entirely on the facts and circumstances of the homicides.

However, the jury did find that two other aggravating circumstances existed beyond a reasonable doubt: that the appellant knowingly created a great risk of death to more than one person and that there existed a probability that the appellant would constitute a continuing threat to society. 21 O.S.1981, § 701.12(2) and (7). In the past, this Court refused to "speculate as to whether the jury would have imposed the death sentence in the absence of the infirm aggravating circumstance." *Boutwell v. State,* 659 P.2d 322, 329 (Okl.Cr.1983). However, in *Stouffer v. State,* 742 P.2d 562, 564 (Okl.Cr.1987), we held that a weighing of the aggravating circumstances versus mitigating factors was appropriate upon review.

■ It is readily apparent from the facts that the three murders created a great risk of death to more than one person. All three victims knew the appellant. All of the victims resided in the same house and were present when the appellant arrived. The fact that all of the victims were not together when the appellant killed them is immaterial. *See Cartwright v. State,* 695 P.2d 548, 555 (Okl.Cr.1985) and *Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984).

■ It is also apparent that the appellant constituted a continuing threat to society. This is supported by the testimony of Mychau Troung, who had lived with the appellant after the murders. Ms. Troung testified that the appellant had physically abused and mistreated her over a long period of time. This evidence coupled with the calloused nature of the murders provides sufficient evidence that the appellant constitutes a continuing threat to society. *See VanWoundenberg v. State,* 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

■ After a review of the record, we find that the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor. Furthermore, after careful consideration of the evidence supporting the aggravating circumstances, and the evidence of circum-

stances which may in fairness and mercy be considered as extenuating or reducing the degree of moral culpability,[1] we find the sentences of death both factually substantiated and appropriate. 21 O.S.Supp. 1986, § 701.13(C). Due to the overwhelming evidence of guilt, the jury's finding that the murders were heinous, atrocious, or cruel was at most harmless error. *Stouffer v. State*, 742 P.2d 562, 564 (Okl.Cr. 1987), *cert. denied* — U.S. —, 108 S.Ct. 763, 98 L.Ed.2d 779 (1987). *See also Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). Nor can we say that the sentence of death is arbitrary or capricious after the inappropriately determined aggravating circumstance is removed from consideration and the aggravating and mitigating circumstances are reweighed.

For the foregoing reasons, the judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I cannot agree with the majority that the State failed to prove the murders of the two children were "especially heinous, atrocious, or cruel" beyond a reasonable doubt. *See* 21 O.S.1981, § 701.12(4). This aggravating circumstance is limited to murders involving torture or serious physical abuse. *Stouffer v. State*, 742 P.2d 562, 563 (Okla. Crim.App.1987) (Opinion on Rehearing). As was true in *Stouffer*, the jury in this case was properly instructed that "[t]he phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse." (O.R. 124) *See Oklahoma Uniform Jury Instruction–Criminal* (OUJI–CR) 436 (1981).

Six-year-old Joseph White and three-year-old Amanda White died as the result of seventeen and twenty-two stab wounds respectively. While it is true the State did not present direct testimony that the two children suffered torture or serious physical abuse preceding death, the record contains testimonial as well as photographic evidence that both children were awakened after midnight and suffered multiple non-fatal stab wounds. The blood splattered on the bed, wall, and floor of the children's bedroom suggested a struggle, and indicated the children did not die instantaneously. I believe the foregoing constitutes sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the two children suffered torture or serious physical abuse preceding death. Accordingly, I find the "especially heinous, atrocious or cruel" aggravating circumstance supported by the evidence. *See Harris v. State*, 438 So.2d 787, 789 & 797 (Fla.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984); *Breedlove v. State*, 413 So.2d 1, 9 (Fla. 1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), *reh'g denied*, 459 U.S. 1060, 103 S.Ct. 482, 74 L.Ed.2d 627 (1982); *Washington v. State*, 362 So.2d 658, 665 (Fla.1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). Consequently, an independent reweighing is unnecessary.

Finally, in accordance with *Green v. State*, 713 P.2d 1032, 1041 (Okla.Crim.App. 1985), I find it necessary to conduct the proportionality review formerly required by 21 O.S.1981, § 701.13(C). Although this case was not pending on appeal at the time the Oklahoma Legislature amended Section 701.13(C) to delete such review, *see* 21 O.S. Supp.1985, § 701.13(C), the critical dates for *ex post facto* purposes "are the date that the offense was committed and the date the statute became effective." *Bromley v. State*, 757 P.2d 382, 388 (Okla.Crim. App.1988). The murders for which appellant was convicted occurred in May of 1982, while the amendment deleting proportionality review became effective July 16, 1985. Thus, the formerly mandated proportionality review, which was in effect at the time appellant committed the murders for which he was convicted, should be conducted. I

---

1. This was the definition of mitigating circumstances given the jury at the sentencing stage.

We also note that the appellant presented no mitigating evidence at the sentencing stage.

have compared the sentence imposed herein with previous cases, and find the sentence proper. *See Castro v. State,* 745 P.2d 394, 409–10 nn. 3, 4 (Okla.Crim.App.1987); *Munson v. State,* 758 P.2d 324 (Okla.Crim. App.1988); *Bromley v. State,* 757 P.2d 382 (Okla.Crim.App.1988); *Stewart v. State,* 757 P.2d 388 (Okla.Crim.App.1988); *Wilson v. State,* 756 P.2d 1240 (Okla.Crim.App. 1988); *Dutton v. Dixon,* 757 P.2d 376 (Okla.Crim.App.1988); *Brown v. State,* 753 P.2d 908 (Okla.Crim.App.1988); *Rojem v. State,* 753 P.2d 359 (Okla.Crim.App.1988); *Hale v. State,* 750 P.2d 130 (Okla.Crim. App.1988); *Mann v. State,* 749 P.2d 1151 (Okla.Crim.App.1988). On the basis of the foregoing, I concur.